THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELLIS C. TALMAGE, Plaintiff in Error.

*Opinion filed April 23, 1908.*

CONFIDENCE GAME—*when party cannot be convicted of the con-
-fidence game.* One who had no connection with a swindling scheme until after other persons had obtained possession of the victim's bank draft, and who was entirely unknown to the victim before that time, cannot be convicted of obtaining the draft from the victim by means of the confidence game, since in such case the element of confidence being reposed in him by the victim is lacking.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

E. M. SEYMOUR, and CHARLES H. BURRAS, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (ROBERT E. TURNEY, of counsel,) for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiff in error, together with George D. Talmage, Ezra S. Barnum and A. H. Manning, was indicted at the March term, 1906, of the criminal court of Cook county. The indictment charged that the plaintiff in error and the three other persons above named unlawfully and feloniously obtained from one Peter A. Baart a certain draft, the same being an instrument in writing of the value of $500, the property of Baart, by means of the confidence game. Manning was never arrested. The other three moved to quash the indictment and that motion was properly overruled. Upon a trial the jury found the two Talmages guilty and Barnum not guilty. The court granted a new trial to George D. Talmage, overruled the motion of plaintiff in error for a new trial and sentenced him to

imprisonment in the penitentiary. The record is brought here for review, and it is contended, among other things, that the evidence does not warrant the verdict.

Baart was a clergyman, residing at Marshall, Michigan. He was an officer in a corporation owning lead and zinc mines near Joplin, Missouri. Representing the corporation, he desired to sell these mines for the sum of $50,000. Upon the recommendation of an acquaintance, early in 1905 he wrote to Barnum, who was, or pretended to be, an investment broker, doing business at 189 LaSalle street, Chicago, Illinois. Baart, by the letter, made certain statements in regard to the mines and inquired whether Barnum would undertake to sell them. Barnum replied, saying that he dealt only in guaranteed securities; that if the corporation would issue debenture bonds for $50,000, due in thirty years and drawing interest at six per cent per annum, and have them guaranteed by a guaranty and trust company, he could effect a sale of the bonds at par within sixty days. He also stated that the guaranty policy would cost one per cent of the amount of the bonds, or $500; that his commission for effecting the sale would be $2500, and that the guaranty company would require that about $15,000 of the proceeds of the bonds be deposited with it, to be invested by it to meet the principal of the bonds when they matured. Various letters passed back and forth between Baart and Barnum until the 25th of April, 1905, when Barnum wrote Baart stating that if immediate application was made to a guaranty company for a policy warranting the bonds he could get the policy in time to enable him to market the bonds before the first of the next July, and that if he failed to do so he would return the $500 paid for the policy. He enclosed a blank application for a policy in the letter, and told Baart either to act upon that letter or drop the matter entirely. Baart filled up and signed the application. He also obtained from the Commercial Savings Bank of Marshall, Michigan, a draft or bill of exchange for $500, pay-

able to his own order and drawn upon the Merchants Loan and Trust Company of Chicago, Illinois. By endorsement on the back thereof Baart made the same payable to the order of "National Underwriting and Trust Co. of San Francisco, Calif.,"—the guaranty company to which the application was addressed. The bill of exchange was dated April 26, 1905, and was enclosed in a letter of the same date from Baart to Barnum, with the application for a policy in the underwriting company. The letter recited the enclosure of the draft and the application. Barnum had selected the guaranty company to which application should be made, and Baart made the application above mentioned in accordance with Barnum's written directions.

Plaintiff in error also pretended to be an investment broker and was the agent of the National Underwriting and Trust Company, with offices at 52 Dearborn street, Chicago, Illinois. When Barnum received the application and the accompanying bill of exchange by mail, on April 28, 1905, he delivered them to plaintiff in error, who endorsed the bill in the name of the National Underwriting and Trust Company, by himself, as agent, and collected the same. On the same day plaintiff in error wrote Baart, at Marshall, Michigan, acknowledging the receipt of the draft and application for a guaranty policy, and stating that from what Barnum told him there could be no doubt that the policy would issue. So far as the evidence shows this was the first connection that plaintiff in error had with the transaction. Up to this time Baart had not seen Barnum nor the plaintiff in error, but the matter had been carried forward solely by correspondence between Barnum and Baart. After this time, however, both plaintiff in error and Barnum corresponded with Baart, and a guaranty policy was sent to him, which, however, did not accord with the application. The bonds were issued but were never sold, and the evidence makes it entirely clear that Barnum never intended to make any effort to sell them. After Barnum had failed to

sell the bonds by July 1, Baart demanded a return of the $500 but was unable to obtain it. Plaintiff in error and Barnum continued in correspondence with Baart, seeking to explain the delay in the sale of the bonds, until about March 1, 1906, when Baart instituted criminal proceedings against them, which ultimately resulted in the conviction of plaintiff in error.

Early in May, following the time when the remittance was sent to Chicago, Mr. Baart went to Chicago and there made the acquaintance of plaintiff in error. He testified that he did not know whether Mr. Talmage had any arrangement with Mr. Barnum about this matter until after he (Baart) made the remittance. It appeared from Mr. Baart's testimony that the underwriting company was without financial responsibility, and that it was officered by employees of plaintiff in error and other similar dummies. No evidence was offered on the part of plaintiff in error except that of character witnesses.

The "confidence game is any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler." (*Maxwell* v. *People*, 158 Ill. 248; *DuBois* v. *People*, 200 id. 157.) At the time he parted with the draft Baart reposed no confidence in plaintiff in error. So far as appears from the evidence, neither at that time knew of the existence of the other. Plaintiff in error did nothing that is disclosed by the proof to obtain the draft from Baart. The latter parted with that instrument relying solely upon the letters written to him by Barnum. The crime charged by the indictment was complete at the moment Barnum obtained possession of the draft. The evidence shows that the plaintiff in error was later guilty of conduct of great moral turpitude, but fails entirely to indicate that he was guilty as charged by the indictment. Such being the case, the motion for a new trial should have been allowed. It is unnecessary to consider the other errors assigned.

The judgment of the criminal court will be reversed and the cause will be remanded to that court for further proceedings not inconsistent with the views in this opinion expressed.                                   *Reversed and remanded.*