THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JOSEPH WEIL et al. Plaintiffs in Error.

*Opinion filed February 16, 1910.*

1. CONFIDENCE GAME—*an indictment need not set out various means resorted to to obtain money.* An indictment for obtaining money by means of the confidence game is sufficient if it is in substantial compliance with the statute, and it is not necessary to set out in the indictment or in the bill of particulars the various devices and means resorted to to secure the confidence of the prosecuting witness and obtain his money.

2. SAME—*what constitutes the confidence game.* Parties who falsely represent to a merchant that they are to place a large order with him and who secure his confidence in themselves and their intentions by falsely representing their business and financal connections, and after securing his confidence induce him to part with his money on a pretended bet on a horse race, are guilty of obtaining money by means of the confidence game.

3. SAME—*proof of uncompleted attempt to obtain money from another person is competent.* In a prosecution for obtaining money by means of the confidence game, proof that the defendants had attempted to work substantially the same scheme upon another person about the time of the transaction charged in the indictment is admissible as tending to show criminal intent, notwithstanding the defendants did not succeed in such attempt.

4. SAME—*prosecuting witness may testify that he relied upon the defendants' false statements.* In a prosecution for obtaining money by means of the confidence game it is not error to permit the prosecuting witness to testify to the fact that he believed in and relied upon the false statements made by the defendants at the time of the transaction.

5. APPEALS AND ERRORS—*it is the rulings of the court that are reviewable and not the conduct of the attorney.* Alleged improper conduct of the State's attorney in the cross-examination of a witness is not reviewable by the Supreme Court, where there are no rulings of the trial court in that respect.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM H. MCSURELY, Judge, presiding.

STEDMAN, SOELKE & SHUTAN, for plaintiffs in error.

W. H. STEAD, Attorney General, JOHN E. W. WAY-MAN, State's Attorney, and ROY WRIGHT, (ROBERT E. CROWE, and FREDERIC BURNHAM, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Joseph Weil and Adolph Lavine were jointly indicted, tried and convicted of obtaining money from Melanchton Smith by means of the confidence game. The court over-ruled motions for a new trial and in arrest of judgment and sentenced the defendants to imprisonment in the peni-tentiary. They have sued out a writ of error to obtain a review of the judgment of conviction.

The principal errors relied on for a reversal are the overruling of the motion to quash the indictment; the re-fusal to grant a new trial because the verdict is contrary to the evidence; alleged errors in the admission and ex-clusion of evidence; the giving and refusing of instruc-tions, and alleged improper conduct of the prosecuting attorney during the taking of the testimony.

The evidence tends to establish the following state of facts: Melanchton Smith was a merchandise broker and manufacturing agent, located at No. 8 Market street, Chi-cago. He had in his employ a salesman by the name of Thomas J. Ryan, who occupied the same room with Smith. On September 11, 1908, between twelve and one o'clock, plaintiffs in error came into Smith's office inquiring for a man by the name of Doyle or Dole, who was in the same business as Smith. They were told that he was out of the city, and they then engaged Ryan in conversation and told him that they wanted to see Doyle in connection with the purchase of a large quantity of olive oil. Weil introduced himself as Joseph Weil and presented his card, and at the same time introduced plaintiff in error Lavine as Mr. Wat-son. They informed Ryan that they had been referred to Doyle by C. G. Bennett, a race-horse man; that they were

244—12

members of and represented the American .Turf Association and intended to buy oil for said association. Smith then came in and was introduced to plaintiffs in error and informed of their business. Plaintiffs in error then told Smith that they represented the American Turf Association and explained to him the purpose for which they wanted the oil. They told Smith that they would probably need from five hundred to one thousand gallons. Weil and Smith then went into the shipping room, leaving Lavine and Ryan in the office. Lavine then exhibited to Ryan a clipping from a newspaper which he said was cut from the *Inter-Ocean,* and passed it to Ryan to read. The substance of the clipping was, that Weil was criticised by some English lord for his method of racing horses in England and because he was getting all their money and bringing it back to this country. Lavine told Ryan at that time that Weil owned a stock farm in Kentucky, known as the Meadow Brook farm, where he had a large number of race horses at that time, and that he and Weil were partners and that Lavine was Weil's betting commissioner. These facts were subsequently communicated to Smith, together with the contents of the newspaper clipping, before Smith parted with his money. The plaintiff in error Weil made certain representations to Smith while they were in the shipping room. He said that he was a wealthy race-horse man; that he owned a large stock farm; that he had won a million dollars on race horses in England, and that he was the administrator of the estate of W. C. Whitney, late Secretary of the Treasury of the United States, and had charge of the Whitney racing stable. After these statements were made by Weil to Smith they returned to the office and Weil placed an order with Smith for five hundred gallons of oil, informing him that he would call him at two o'clock over the telephone and send his secretary over with a check to pay for the five hundred gallons of olive oil. He said that there would be a meeting of

the board of the American Turf Association at two o'clock that afternoon and he could not decide definitely on the order until after the meeting. At two o'clock Weil telephoned Smith that they had decided to take fifty thousand gallons of the oil and that he wished fifty gallons to be shipped to the Meadow Brook farm the next day; that his man was going over with a check for the whole business and shipping directions. He then told Smith that he had a good thing on a string of horses at Montreal that would run that afternoon; that he had a sure winner, and asked Smith whether he ever bet on races and if he did not want him to place $25 or $50 on the races for him. Smith declined and told him he need not do it, and rung off. Weil told him that he would telephone his commissioner to place $25 or $50 for Smith any way. A short time thereafter plaintiff in error Lavine met Smith at the door of his office and said that Weil had telephoned him to put a bet down for Smith that afternoon. Smith told Lavine it was done contrary to his wishes and without his consent. Lavine said that he had to take the money back to the pool room and that he had already made the bet, and handed Smith what purported to be a receipt for the $25 bet, and stated that if he did not give him the $25 Weil would probably be angry and might countermand the order for the oil, and that it would pay him to take the bet anyhow and pay him the $25 and save the order. Smith then said rather than lose such a large order he would give Lavine the $25, which he did. The next time that Smith saw Lavine and Weil they were in the police station, ten days later. Plaintiffs in error were questioned by Smith and a policeman in relation to the manner in which they had obtained the $25 from Smith. They denied ever having been at Smith's place and denied all knowledge of the transaction and said they had never seen Smith before.

The evidence shows that plaintiffs in error were not members of the American Turf Association and never had

any connection therewith; that neither of them had any authority from the American Turf Association, or its board of directors, to purchase or contract for olive oil for said association; that Weil was not administrator of the W. C. Whitney estate or otherwise connected therewith; that he did not own the Meadow Brook farm, and had not won a million dollars, or any other sum, on race horses in England. In short, all of the representations made by plaintiffs in error to Smith, which caused him to believe that he was about to make a large sale of oil to responsible parties, were false and fraudulent and were manifestly made for the purpose of securing the confidence of Smith, to the end that he would give up his money on the alleged bet. There is evidence tending strongly to prove that the receipt, which purported to be a receipt for the bet, was in the handwriting of plaintiff in error Weil.·

It was also proven by the prosecution that on May 29, 1908, plaintiffs in error called at the office of Joseph E. Swanson, a clerk in the employ of Farnham, Willoughby & Co., in answer to an advertisement offering a yacht for sale at Lake Geneva; that Weil stated that he wished to buy the yacht for a jockey by the name of Buchanan, who was connected with his stable; that Weil went into a telephone booth, and while he was in there Lavine said to Swanson: "You evidently do not recognize Weil by his card; he is a famous turfman, who has just made a killing on the English soil and cleaned up a million dollars," and exhibited to Swanson the same newspaper account he had shown to Ryan and asked Swanson to read it. When Weil came back from the telephone booth he stated that he would have to see a friend of his before he closed the negotiations for the yacht and he would telephone Swanson later in the afternoon. He asked Swanson how he would get up to Lake Geneva that night in his automobile, as the yacht, according to Swanson's description, was just the thing he wanted for his jockey. Plaintiffs in error ·

then left Swanson's office. · A short time afterwards Weil telephoned Swanson that they would be over to close up negotiations for the yacht later on in the afternoon, and asked Swanson to take advantage of some inside information upon a race being run that afternoon in Louisville, Kentucky, and bet $25 on "Errand Boy," stating to Swanson that if he did not know where to place the money he would send his betting commissioner over and get the money and place it for him. Swanson consented and sent out for a policeman, and when the plaintiff in error Lavine called· to get the $25 from Swanson he was arrested, and the arrest of Weil followed soon after.

Plaintiffs in error contend that the court erred in overruling their motion to quash the indictment. No objection to the indictment is pointed out in their argument. The indictment is in the usual form which has frequently been approved by this court. It is in substantial compliance with paragraph 99 of the Criminal Code and is therefore sufficient. (*Graham* v. *People,* 181 Ill. 477.) It was not necessary to set out, either in the indictment or in a bill of particulars, the various devices and means resorted to to obtain the confidence of the prosecuting witness to obtain his money. (*DuBois* v. *People,* 200 Ill. 157.) There was no abuse of the discretion vested in the court in overruling the motion to require the prosecution to furnish a bill of particulars. *Gallagher* v. *People,* 211 Ill. 158.

Plaintiffs in error insist that the verdict is contrary to the evidence and that the court should have granted them a new trial. The facts set out in the preceding statement would seem to be a complete ˙answer to this contention. There can be no reasonable doubt that plaintiffs in error secured the confidence of Smith by leading him to believe that they wanted to buy a large quantity of oil, and that when they had his confidence they took advantage of it and induced him to part with $25 on a ˙pretended bet on a horse race. It is clear that Smith knew nothing about the

horse race and did not want to bet on it, but he gave the money to plaintiffs in error because of the confidence that he had in them that they were financially able to buy, and would buy, a large quantity of olive oil from him. The evidence shows also that plaintiffs in error attempted to work substantially the same scheme on Swanson a short time before the transaction in question occurred. This evidence was competent and tended to show the guilty purpose the plaintiffs in error had in the pretended oil transaction with Smith. We do not see how an intelligent jury could reach any other conclusion than that plaintiffs in error were proven guilty as charged in the indictment.

Plaintiffs in error contend that the court admitted improper evidence over their objections. It is urged that the prosecuting witness should not have been permitted to state that he relied on the alleged false pretenses. Plaintiffs in error contend that this was not a matter of fact but was a mere opinion. We fail to see any force in this contention. If Smith believed in and relied on the false statements made to him by plaintiffs in error, it was a fact to which he was competent to testify.

Plaintiffs in error complain that the witness Ryan was permitted to testify to statements made to him out of the presence of Smith. The statements referred to are those made to Ryan by plaintiff in error Lavine while Weil and Smith were in the shipping room. Ryan's evidence shows that he reported the substance of what Lavine said to him to Smith after the plaintiffs in error left the office. This, together with the fact that Weil made the same statements, in effect, to Smith, rendered this testimony competent.

The only other point urged against the rulings of the court as to the admission of testimony is in reference to the evidence of the Swanson transaction. It is said that the Swanson transaction was only an incompleted attempt, and was not, for that reason, a similar transaction to the one involved in this case. It is true, the intervention of the

police prevented plaintiffs in error from actually getting Swanson's money, but no one doubts that they would have accepted it and completed the offense if their plans had not miscarried. We fail to see any reason why the rules of law should be relaxed in their favor because plaintiffs in error failed to complete the contemplated crime. Proof of other similar transactions are admissible in this class of cases to prove criminal intent. (*DuBois* v. *People, supra.*) There was no error in the rulings in regard to the evidence.

Plaintiffs in error next complain of the refusal of the court to give thirteen instructions which were asked by them and refused by the court. It is not necessary to examine these instructions in detail. Suffice it to say that the law was as favorably stated for plaintiffs in error in the instructions that were given as they were entitled to have it stated. The court gave on behalf of the plaintiffs in error eighteen instructions, which fully covered every phase of their case. The practice of duplicating instructions and repeating the same proposition over and over has often been condemned by this court. Plaintiffs in error have no just ground to complain of the refusal of the court to overload this case with thirty or more instructions for plaintiffs in error.

Plaintiffs in error's last contention is that the State's attorney was guilty of improper conduct in the cross-examination of plaintiff in error Lavine. An examination of the record upon this point does not show that there was any ruling of the court which requires our consideration. It is the rulings of the court, and not the conduct of attorneys, that is reviewed here.

Under the evidence plaintiffs in error are clearly guilty of the charge laid against them. They have had a fair public trial, free from any errors which would warrant us in reversing the judgment. The judgment is affirmed.

*Judgment affirmed.*