(No. 11555.—Judgment reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HYMAN GALLOWICH, Plaintiff in Error.

*Opinion filed April 17, 1918.*

1. CRIMINAL LAW—*confidence game defined.* The confidence game is any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler.

2. SAME—*what constitutes the offense of obtaining property by false pretenses.* To constitute the offense of obtaining property by false pretenses the false pretenses must have been believed and relied on by the defrauded party and must be the direct cause of the loss, and it must be charged in the indictment and proved at the trial that the property was obtained by means of the false pretenses.

3. SAME—*what person cannot be convicted of obtaining money by means of confidence game.* To constitute the offense of obtaining money by means of the confidence game it must be proved that the person accused obtained the money by reason of the confidence reposed in him, and where the facts show that the taking was accomplished by overcoming the will of the victim by force or fear and not by reason of any confidence reposed in the accused, he can not be convicted on a count charging the confidence game.

CARTER, C. J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

B. M. SHAFFNER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, and MACLAY HOYNE, State's Attorney, (GEORGE C. BLISS, of counsel,) for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

In an indictment containing two counts returned by the grand jury of Cook county, plaintiff in error, Hyman Gallowich, was charged in the first count with obtaining $200 from Rosie Janos by means of the confidence game, and the second count charged him with larceny in taking the money or property of Rosie Janos. A trial was had before a jury

in the criminal court of Cook county. Plaintiff in error was found guilty under the first count of the indictment. Judgment was entered on the verdict, and he has sued out this writ of error to review the judgment.

Numerous errors are assigned on the record, but in the view we take of the case it is only necessary to consider one of them,—that the verdict is contrary to the evidence.

The testimony on behalf of the People relied on to sustain the conviction is that of the prosecuting witness, Rosie Janos, and her niece, Julia Paucky. From the testimony of Mrs. Janos, who was a property owner, it appears that both she and the plaintiff in error had been largely engaged in furnishing bonds for persons who had been arrested and accused of crime. In the course of their dealings plaintiff in error had become indebted to Mrs. Janos in the sum of $200 and she sent word to him to pay it, and he suggested to her that he would get her a bond to sign so she could get back the money he owed. She informed him that she could not sign a bond because Michael Frank, whose bond she had previously signed, had failed to appear for trial and his bond had been forfeited. She further testified that a few weeks afterward plaintiff in error came to her house and informed her that if she did not give him $200 to give the judge she would lose the property she had scheduled as surety on Frank's bond, and requested her to bring the $200 to the criminal court building. Mrs. Janos borrowed $200 and with her niece, Miss Paucky, went to the criminal court building. She met plaintiff in error there but she insisted on giving the $200 to the judge herself. Plaintiff in error informed her that the judge was not allowed to take the money in his own office, because, as he expressed it, "he would be chased out from his work." He told her to wait in the corridor and he would bring the judge over. He left and returned in about fifteen minutes and took Mrs. Janos and her niece into another room. A man came into this room and there was some talk about the forfeiture of the

bond, but it does not appear that this man was represented as the judge and nothing was said about turning over the money to him. Plaintiff in error again requested Mrs. Janos to give him the money so he could give it to the judge, but she again refused and insisted on giving it to the judge herself. Finally plaintiff in error asked her if she had the money. She opened her purse and showed him the money, and when he saw the money he grabbed it and ran out to the elevator, and Mrs. Janos and her niece ran after him but were unable to catch up with him and he got away. The niece, Julia Paucky, testified that her aunt brought the money to the criminal court building and that she wanted to give it to the judge; that Mrs. Janos asked, "Where is the judge?" and plaintiff in error said, "Well, you cannot give it to him; I have got to give it to him," and her aunt took the money out of her pocket book and plaintiff in error grabbed the money and ran to the elevator and she and Mrs. Janos followed him to the elevator but he was gone. This, in substance, is the evidence on behalf of the People.

The plaintiff in error testified that he was well acquainted with Mrs. Janos and had known her about eight years; that they lived about half a block apart and had become well acquainted in the business of signing bonds; that Mrs. Janos had come to see him about the bond of Michael Frank, which had been forfeited, and that afterward she met him at the criminal court building and gave him the $200 to assist her in getting Frank apprehended and the forfeiture of his bond set aside; that he paid an attorney $75 and spent about four weeks with the other surety and with the sheriff looking for Frank, and finally through his attorney succeeded in locating him and getting him apprehended and in custody and had the forfeiture set aside on the payment of costs, amounting to $48; that he continued to do business with Mrs. Janos after he received the $200, and had been with her in the State's attorney's office on several different occasions since that time; that he never

mentioned anything to her about fixing a judge or any court officer, and that he kept the balance of the money she gave him, except the $75 he paid Frank's attorney and $48 court costs, for his services. Plaintiff in error is corroborated to some extent by a witness named Brady, who saw the parties in the criminal court building, and by the deputy clerk of the criminal court, and by the records of that court as to the setting aside of the default on the Michael Frank bond.

Under the evidence it is clear that the conviction of the plaintiff in error for obtaining money by means of the confidence game cannot stand. The confidence game is any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. (*Morton* v. *People,* 47 Ill. 468; *Maxwell* v. *People,* 158 id. 248; *Du-Bois* v. *People,* 200 id. 157; *People* v. *Depew,* 237 id. 574.) In *People* v. *Talmage,* 233 Ill. 560, we held that one who has had no connection with a swindling scheme until after other persons had obtained possession of the victim's bank draft, and who was entirely unknown to the victim before that time, cannot be convicted of obtaining the draft from the victim by means of the confidence game, since in such case the element of confidence being reposed in him by the victim is lacking. In *People* v. *Weil,* 244 Ill. 176, it was held that in a prosecution for obtaining money by means of the confidence game it is not error to permit the prosecuting witness to testify to the fact that he believed and relied upon the false statements made by the defendants at the time of the transaction. In *Dorr* v. *People,* 228 Ill. 216, it was said on page 224 of the opinion: "It is not sufficient under such an indictment [obtaining property by means and use of the confidence game] to prove the defendant guilty of such acts and fraudulent practices as would subject him to liability in a civil action or to indictment and prosecution under some other provision of the Criminal Code."

In the somewhat similar offense of obtaining money by false pretenses the false pretense made use of for the pur-

pose must have been believed and relied upon by the defrauded party and been the means of inducing the prosecutor to part with the property. (Am. & Eng. Ency. of Law, (2d ed.) 819; 2 Wharton on Crim. Law,—11th ed.— 1627.) False representations, or anything claimed to be representations, in order to be "false pretenses" within the meaning of the law, must be the direct cause of the loss of the thing of value; must be the moving cause and not the cause of the cause; must be the proximate cause. (*Pierce* v. *People,* 81 Ill. 98; *Commonwealth* v. *Drew,* 19 Pick. 184.) To sustain a prosecution for obtaining goods under false pretenses, it must, in legal effect, be charged in the indictment as well as proved at the trial that the goods were obtained by means of the alleged false pretenses. *People* v. *McAllister,* 49 Mich. 12; *State* v. *Connor,* 110 Ind. 469.

From these authorities it is clear that to support a conviction for obtaining the money of another by means of the confidence game the money must be obtained by the person convicted by reason of the confidence reposed in him by his victim,—that is, that the confidence induced in the victim, by means of whatever swindle, device or scheme is used, must be the moving cause and reason for the victim parting with his money and giving it to the accused. Tested by this rule, even if the testimony of Mrs. Janos is to be believed in its entirety, there is no evidence that she parted with her money because of any confidence in any representations that plaintiff in error made to her that it was to be used to bribe a judge. On the contrary, according to her testimony and the testimony of her niece, she was not moved by such representations and did not repose confidence in him but consistently refused to part with her money and insisted on handing it to the judge herself. According to the evidence, if the loss of her money had depended upon the confidence she had in plaintiff in error she would not have parted with it or been deprived of it. On the contrary, the plaintiff in error, according to her story, was

obliged to and did take it by force and did not secure it on the pretense that he would use it to bribe a judge.

There are various crimes by which a person may obtain the property of another, ranging from extortion by threats (commonly called blackmail) to robbery and burglary. What constitutes and distinguishes the crime in any case is the method or means employed to separate the victim from his money or property, and the crime must be proved as charged. In prosecutions for obtaining money by the confidence game it must be proved that the person accused obtained the money or property of his victim by reason of the confidence reposed in him, and this the plaintiff in error clearly did not do.

The case of *VanEyck* v. *People,* 178 Ill. 199, is relied upon by counsel for defendant in error. In that case the person whose money was taken was lured to a saloon by swindlers, who there showed him a game with dice and during the game took his money from him and threatened to have him arrested for gambling and kept his money and ejected him from the saloon, but it was held in that case that the accused was an accessory, and that inducing a man to bet on the top and bottom of dice and taking his pocketbook and money from his pocket for the purpose of betting is a confidence game rather than a robbery, even though fear is aroused in him for the loss of his money, and that the facts proven indicated enough of a confidence game to sustain a conviction and distinguish it from robbery. It is true that the same act may constitute different offenses, but there are some offenses which are so different from each other that proof of facts which would constitute one offense would disprove the commission of another in the very nature of things. For instance, facts which would clearly constitute nothing but robbery or a taking by overcoming the will of the victim by force or fear could never justify a conviction for obtaining money by the confidence game or by false pretenses, or *vice versa,* because proof of facts

which show the overpowering of the will by force or fear in one case would also show that there was no confidence reposed in the accused by the person whose will and powers of resistance were so overcome. We are referred to no case, and are aware of none, in which a conviction for obtaining money from another by means of the confidence game has been sustained where the element of confidence reposed in the swindler was lacking or where evidence was lacking that the victim parted with his money by reason of such confidence.

For the reasons stated the judgment of the criminal court of Cook county must be reversed.

*Judgment reversed.*

Mr. CHIEF JUSTICE CARTER, dissenting.