THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSE ORTIZ, Plaintiff in Error.

*Opinion filed February 18, 1926.*

1. CRIMINAL LAW—*when venue is sufficiently proved.* To prove venue it is sufficient if the evidence, as a whole, leaves no reasonable doubt that the criminal act was committed at the place laid in the indictment.

2. SAME—*what does not prove insanity.* The facts that one's jealousy is easily aroused, that he lacks self-control, and that he confesses a serious crime for no apparent reason, do not prove that he is insane.

3. SAME—*there is a presumption of sanity.* Every person is presumed sane and responsible for his acts until the contrary appears.

4. SAME—*what provocation will not make killing manslaughter.* Reproof of a person for shooting and making trouble, although accompanied with an exhibition of anger, is not such provocation as will make his unlawful killing of the other manslaughter instead of murder.

5. SAME—*party accused of a crime is entitled to an impartial jury.* Every person charged with a crime is entitled to a speedy public trial by an impartial jury, and great care should be exercised to preserve to the accused this constitutional right.

6. SAME—*when juror is disqualified.* A juror who prior to his acceptance for a particular case has expressed a decided conviction upon the merits, or who, without qualification, says that the defendant is guilty, is disqualified, because he does not stand impartially between the parties.

7. SAME—*when defendant is entitled to a new trial—waiver.* Where a juror deceives or misleads a party by falsely testifying that he is unprejudiced or impartial, on discovery of the fact after verdict a new trial will be ordered; and the defendant does not waive his rights in such case by failing to challenge the juror upon the trial.

8. SAME—*when the court should hear oral testimony upon motion for new trial.* While it is not usual to examine witnesses in court upon motion for a new trial, the method of procedure rests largely within the discretion of the trial court, and where a witness is present in court and ready to testify that one of the jurors prior to his acceptance expressed a decided conviction of the defendant's guilt the court should hear such testimony where the witness declines to make an affidavit.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

IRWIN R. WASSON, and GEORGE W. SPRENGER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HENRY E. PRATT, State's Attorney, and EDWARD C. FITCH, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Jose Ortiz, alias Joseph Ortiz, was indicted at the March, 1925, term of the circuit court of Peoria county for the murder of Emiliana Martinez. A jury trial resulted in a verdict finding him guilty and fixing his punishment at death. He made a motion for a new trial, which was denied, and judgment was rendered and sentence of death imposed. On his application this court allowed a writ of error and made it a *supersedeas,* and the record is here for review.

The crime was committed near the foot of Morton street, in the city of Peoria. Morton street runs south to the Illinois river, which at the point in question flows in a southwesterly direction. The tracks of the Chicago, Rock Island and Pacific Railway Company run westerly of and parallel with the river and cross Morton street a short distance above its termination. Between the river and the railroad tracks are a number of shanties occupied by Mexicans. Emiliana Martinez was a Mexican girl about seventeen years of age, and lived with her brother, Anthony Martinez, and his family, in one of these shanties. On the morning of March 12, 1924, Miss Martinez put a washing out on the line to dry. A little later Clara Coons, a neighbor, saw that some of the sheets were dragging upon the ground, and when she went to pin them more securely she looked over the bank toward the river and discovered the body of Miss Martinez lying on the ground. At the re-

quest of the coroner the body was removed to an under-taking establishment and in the evening an autopsy was performed. Three bullets were removed from the body. The large artery at the base of the neck was wounded, the injury causing a hemorrhage into the left pleural cavity sufficient to cause death. There was another bullet wound in the left thigh and one in the right lower abdomen.

On the same morning Virgil Hill, a young man about nineteen years of age, approached Anthony Martinez's home looking for Clarence Coons. As Hill crossed the railroad tracks he saw a Mexican girl, with whom he was not acquainted, hanging up clothes and inquired of her where Coons resided. She replied that she did not know. He then turned, walked a short distance toward the river and was looking across it when he heard a man coming upon him from behind. As he looked backward the man, whom he had never seen before and who was dressed in overalls and a soft hat but had no overcoat, approached more closely, and when a foot and a half away, without uttering a word, fired his revolver. The bullet entered the right side of Hill's nose and passed out near the right ear. Hill then ran toward the river, and as he did so heard three shots, none of which appeared to be aimed at him because he did not hear the sound of passing bullets. He hid behind a small shed, looked over the top of it and saw the man who shot him approaching. Hill escaped to a roundhouse a short distance away, where employees of the railroad washed his face. Later he was removed to a hospital. While Hill was at the roundhouse one of the railroad's employees saw a man cross the tracks and followed him. He was brought to the roundhouse and identified as Ortiz, the plaintiff in error. He was asked where he was going, and he answered that he was on the way to a store. When asked why he shot Hill he denied it. A little later a police officer came and one of the railroad men informed him that Hill had been shot by a Mexican; that he did not know whether

Ortiz shot Hill or not, but that he "grabbed the first Mexican" he saw. The officer took Ortiz into custody. He did not at that time wear overalls but was dressed in an army overcoat, blue trousers and a yellow hat.

Ortiz was questioned by the police at the city hall in Peoria. At first he denied the shooting but later asked for Anthony Martinez, the brother of the deceased girl. After Martinez arrived Ortiz talked with him in the Mexican language. The police officers were present and Martinez translated into English what Ortiz said. Martinez inquired of him why he shot and killed his sister. Ortiz denied the charge and added that he went to the store to buy some groceries. Martinez then asked him to tell the truth, and, in the event that he did so, offered to give him such assistance as he, Martinez, could render. Ortiz complied with the request and told Martinez that he had sent his sister some letters and pictures and that she had returned them; that on the morning in question he caught another man talking to her and he instantly became jealous, caught the man and shot him; that immediately after this shooting Martinez's sister called him, said that he should not make trouble about her home and became angry; that he replied, "You like the white people pretty good," and then called her a name and shot her, and that if she had not said a word to him he would have killed the man and she would not have been harmed. The police officers then asked him where he put the revolver with which he did the shooting, and he told them. They went to the place to which he directed them and found the revolver, loaded with five shells. One of the officers inquired whether the revolver shown him was the one with which he shot the young woman, and he answered in the affirmative. He also admitted that he reloaded the revolver after the shooting. The revolver and the loaded cartridges were admitted in evidence.

Ortiz did not testify on the trial. The only evidence offered in his behalf was the testimony of two witnesses,

both imprisoned in the county jail, one of whom testified that Ortiz had an inordinate appetite and the other that he slept soundly.

On the hearing of the motion for a new trial counsel for Ortiz sought to show that C. A. Donaldson, who served as a juror in the cause, before he was accepted as such, had said to one Happ, in speaking of Ortiz, that "they better not take me on that jury or I will hang that Mexican —— —— ——;" that Donaldson on his *voir dire* had failed to disclose his hostility to Ortiz and had deceived both court and counsel in regard to his prejudice, and that Happ, owing to certain peculiar ideas, was unwilling to make an affidavit but was present and ready to testify under oath that Donaldson had made the statement. When the offer of Happ's testimony was made by counsel for Ortiz the trial judge stated that affidavits might be filed, but he refused to hear oral testimony on the motion or to permit a record of the offer, and the ruling thereon, to be made. There followed at the June, 1925, term of this court an application for leave to file an original petition for a writ of *mandamus* commanding the trial judge to incorporate in the bill of exceptions in the cause the proceedings upon the motion for a new trial. Leave was granted, and upon the petition, and the respondent's answer thereto, the writ was awarded. The facts with reference to the motion for a new trial and its disposition are more fully set forth in the opinion in that cause entitled *People* v. *Green,* 318 Ill. 421.

The contentions of plaintiff in error are: (1) That the venue was not proved; (2) that the evidence shows that plaintiff in error was insane; (3) that if any crime was committed it was voluntary manslaughter and not murder; and (4) that the trial court erred in refusing to allow the plaintiff in error to show, by oral testimony in support of his motion for a new trial, that juror Donaldson was disqualified to serve because of his prejudice against plaintiff in error.

**320—14**

The indictment charges that the crime was committed in Peoria county, Illinois. Several witnesses testified that the place where plaintiff in error shot and killed Emiliana Martinez was located within that county. There was no countervailing evidence. To prove venue it is sufficient if the evidence as a whole leaves no reasonable doubt that the criminal act was committed at the place laid in the indictment. (*People* v. *Shaw,* 300 Ill. 451; *People* v. *Allegretti,* 291 id. 364; *Porter* v. *People,* 158 id. 370.) The first contention is without merit.

It is argued that because plaintiff in error shot Hill when he found him in conversation with Emiliana Martinez, and because with childlike simplicity he confessed a serious crime which ordinarily would interpose an insurmountable barrier to his acquittal, he is obviously insane. The fact that one's jealousy is easily aroused does not necessarily show a deluded mind. It does not follow that a man is insane because he lacks self-control. Nor does the making of a confession by a person charged with crime denote insanity. There are sane persons who occasionally exhibit a loss of self-control and even an inclination to confess criminal acts. Every man is presumed to be sane and responsible for his acts until the contrary appears. The evidence offered in behalf of plaintiff in error merely shows that he ate excessively and slept soundly while he was imprisoned in the county jail. Such evidence certainly fails to establish any diseased state of his mind, and no other evidence was adduced to overcome the presumption that plaintiff in error was sane and responsible for his acts.

To support the contention that if any crime was committed it was voluntary manslaughter and not murder, it is argued that there was no showing of intent or premeditation on the part of plaintiff in error; that even if he intended to kill Virgil Hill he did not intend to kill Emiliana Martinez; that there was an interval of time between the shooting of Hill and the killing of Miss Martinez, and that

the latter act was the result of a provocation which occurred after the shooting of Hill, namely, her reproof of plaintiff in error for making trouble about her home. The law presumes that every sane person intends the natural and probable consequences of his acts. (*People* v. *Crenshaw*, 298 Ill. 412; 1 Wharton on Crim. Law,—11th ed.— sec. 147; 1 Greenleaf on Evidence,—Lewis' ed.—sec. 18.) The fact that at the time plaintiff in error shot Hill he had no intention of shooting Miss Martinez does not change the character of his offense. Neither the sudden heat or impulse of passion nor the lack of premeditation, without more, suffices to reduce the offense from murder to voluntary manslaughter. To constitute the criminal act committed by plaintiff in error one of voluntary manslaughter there must have been a serious and highly provoking injury inflicted upon plaintiff in error sufficient to excite an irresistible passion in a reasonable person or an attempt by Miss Martinez to commit a serious personal injury upon plaintiff in error. Neither of these elements was present in the instant case. Reproof of a person for shooting and making trouble about one's home, or even an exhibition of anger under such circumstances, is not such provocation as will make the unlawful killing of a human being manslaughter instead of murder. Smith's Stat. 1925, chap. 38, secs. 143, 144; *Jackson* v. *People*, 18 Ill. 269; *Steffy* v. *People*, 130 id. 98; *McCoy* v. *People*, 175 id. 224; *People* v. *Watkins*, 309 id. 318; 1 Wharton on Crim. Law, (11th ed.) pp. 614, 748.

Every person charged with crime is entitled to a speedy public trial by an impartial jury. (Const. art. 2, sec. 9.) It is elementary that a juror should be impartial, and great care should be exercised to preserve to the accused person his constitutional right to an impartial jury and a fair trial. The juror must come to the trial of the cause with a mind uncommitted and prepared to weigh the evidence impartially. He must, in the language of Lord Coke, "stand in-

different as he stands unsworn." A juror who prior to his acceptance has expressed a decided conviction upon the merits of the case, or who, without any qualification, says that the defendant is guilty, is disqualified because he does not stand impartially between the parties. If he is ready to answer the question, Is the prisoner guilty or is he innocent?—then, obviously, he is incompetent. If the existence of certain facts has been established in his mind to the extent of producing conviction he is disqualified, for neither party should be put to the necessity of adducing proof to remove a preconceived opinion. A trial would become a mockery if a person who had prejudged the case were permitted to serve as a juror. (*People* v. *Mooney,* 303 Ill. 469; *Coughlin* v. *People,* 144 id. 140; *Plummer* v. *People,* 74 id. 361; *Davis* v. *Walker,* 60 id. 452; *Collins* v. *People,* 48 id. 145; *Gray* v. *People,* 26 id. 344; *Neely* v. *People,* 13 id. 685; *Vennum* v. *Harwood,* 1 Gilm. 659; *Sellers* v. *People,* 3 Scam. 412; *Smith* v. *Eames,* id. 76.) Donaldson served as a juror and found a verdict against plaintiff in error in conformity with the statement attributed to him. If Donaldson prior to his acceptance as a juror made the statement that "they better not take me on that jury or I will hang that Mexican — — —," his firm conviction of the prisoner's guilt, or, in any event, his prejudice, was clearly shown and emphatically expressed. Such a statement, if made, evinces an attitude which precludes that fair and impartial consideration of the evidence which is constitutionally guaranteed to every person charged with a criminal offense. *Sellers* v. *People, supra.*

It appears that Donaldson had been interrogated upon his *voir dire* concerning his qualifications to serve as a juror and that he had not upon that examination disclosed any prejudice against the plaintiff in error. Not until after the trial and while the motion for a new trial was pending did Happ impart to counsel for plaintiff in error the information that Donaldson had made the statement.

It is the general rule that where a juror deceives or misleads a party by falsely testifying that he is unprejudiced or impartial, on discovery of the fact after verdict a new trial will be ordered. (*Sellers* v. *People, supra; Vennum* v. *Harwood, supra.*) It would defeat the purpose of the constitutional provision which affords every person accused of crime a trial by an impartial jury, to hold that under the facts here shown plaintiff in error had waived the right to challenge the juror by failing to do so upon the trial.

On the hearing of the motion for a new trial the circuit judge stated that he would permit the filing of affidavits, but he refused to hear oral testimony. While it is not usual to examine witnesses in court upon a motion for a new trial, yet the practice is permissible. The method of procedure rests largely within the discretion of the trial court. Oral testimony may be heard upon such a motion. (*Schoolfield* v. *Brunton,* 20 Colo. 139; *Gano* v. *Wells,* 36 Kan. 688.) Whether the witness Happ, with or without reason, declined to make an affidavit is of little consequence, for he was present in court and ready to testify, but whether the charge made against the juror Donaldson was true or false was of the utmost importance to plaintiff in error and could only be determined by the court upon consideration of the proof offered upon the hearing of the motion for a new trial. The excluded testimony presented the question whether plaintiff in error had a trial by an impartial jury, and the trial court should have heard that testimony. Not having done so the question remains, and since it can only be determined originally by the trial court, the cause must be remanded solely for that purpose.

The judgment will be reversed and the cause remanded to the circuit court, with directions to hear the motion for new trial in accordance with the views here expressed and to take such further proceedings as law and justice shall require.            *Reversed and remanded, with directions.*