THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES L. TUCKER, Defendant-Appellant.
Fourth District   No. 4—89—0337

Opinion filed January 25, 1990.

Robert M. Travers, of Fellheimer, Travers, Luckman & Engelman, Ltd., of Pontiac, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant was charged with driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501), and with disobeying a traffic control device (Ill. Rev. Stat. 1987, ch. 95½, par. 11—305(a)). After a jury trial, defendant was convicted on both charges. However, the trial court granted defendant a new trial for the traffic control device charge. Defendant appeals his conviction for DUI.

During jury selection, Theresa Stadel was interviewed and indicated that she was familiar with defendant, as they both resided in the same small town. However, Stadel indicated there was nothing about her knowledge of defendant that would affect her impartiality as a juror. Neither the State nor defendant's attorney questioned Stadel about her knowledge of defendant, or objected to her presence on the jury. Stadel was subsequently chosen as a juror in defendant's trial.

At trial, the arresting officer, Trooper Eddie Betts, described defendant's driving on the night in question and how defendant appeared when pulled over. According to Trooper Betts, defendant's driving was erratic and, when pulled over, defendant had trouble producing his license and standing up. The testimony continued:

"Q. *** Based on the results of your observation in the field

sobriety tests, did you then make a decision?

A. Yes, sir; I did.

Q. And what was that?

A. I felt that the defendant was under the influence of intoxicating liquor."

Next to testify was Trooper Marcus Lucas. Lucas observed defendant at the station house and testified that he could smell the strong odor of alcohol on defendant's breath. Lucas further testified that defendant's speech was slurred and that he refused to take the breathalyzer test.

Sandra Tucker (defendant's wife), John Schrof, and Judy Fansler also testified. These witnesses each stated they saw defendant on the night in question and that he did not appear to be under the influence of alcohol.

Testimony was also presented by Dr. Homer Parkhill to the effect that, taking into account defendant's size and the amount he supposedly drank on the night in question, defendant probably was not under the influence of alcohol.

Finally, defendant testified. Defendant stated the number of drinks he had and at what times he had them. Defendant further described the circumstances of his arrest, his conversations with the arresting officer and the administration of field sobriety tests. At this point in the testimony, defendant's attorney asked the following question in the presence of the jury:

"Q. Were you under the influence of alcohol at the time that you were driving a vehicle? I'm not going to ask you about at the time of these tests, but at the time you were driving the vehicle?

A. No."

The State objected to the question, claiming no foundation. The court sustained the objection and instructed the jury to disregard the response.

The case went to the jury and, over defendant's objection, the trial court gave People's instruction No. 9, the approved IPI issues instruction on DUI. (See Illinois Pattern Jury Instructions, Criminal, No. 23.04, at 529 (2d ed. 1981) (IPI Criminal 2d No. 23.04).) The People's instruction No. 9 stated in pertinent part:

"To sustain the charge of driving under the influence of alcohol, the State must prove the following propositions: First: that the defendant drove a vehicle; and second: that the defendant *then* was under the influence of the alcohol." (Emphasis added.)

Defendant's instruction No. 3, which was tendered and refused, stated

in pertinent part:

"To sustain the charge of driving under the influence of alcohol, the State must prove the following propositions:

First: that the defendant drove a vehicle, and second: that at the time the defendant drove the vehicle, the defendant was under the influence of alcohol."

See IPI Criminal 2d No. 23.04, at 272 (Supp. 1989).

Defendant was convicted and sentenced to 12 months' conditional discharge, with conditions including a $400 fine plus court costs, four weekends of homebound detention, no admittance into any establishment whose primary purpose is the sale of alcohol by the glass, and treatment as recommended by the Court Services office.

After the trial, Staddel stated to defendant's lawyer's secretary that it was a shame the jury had to convict defendant, but in light of his priors they had to. This statement was part of defendant's post-trial motion for a new hearing. The trial court denied the motion.

Defendant raises three issues on appeal: (1) improper jury instructions; (2) trial court error in sustaining the State's objection to the question concerning defendant's intoxication; and (3) improper juror conduct. Defendant first argues that the trial court erred when it tendered the People's instruction No. 9 to the jury. Defendant believes this was error for two reasons: (1) by giving People's instruction No. 9, the court in effect gave a non-IPI instruction to the jury; and (2) the instruction itself was ambiguous. We disagree.

Defendant's first contention in regard to the jury instructions is that the trial court gave a non-IPI jury instruction in violation of Illinois Supreme Court rules. Supreme Court Rule 451(a) states that IPI criminal instructions shall be used in criminal cases unless they do not accurately reflect the law. (107 Ill. 2d R. 451(a).) Defendant argues that because defendant's instruction No. 3 is a more recent version of the People's instruction No. 9, the jury received an outdated, non-IPI instruction. There are two errors in defendant's argument.

■ Defendant labeled his instruction "I.P.I. Criminal 2d 1988, 23.04 Modified." The trial was conducted in November 1988. Defendant's instruction is not included in the 1987 supplement to the IPI criminal instructions (see IPI Criminal 2d (Supp. 1987)), but does appear in the 1989 supplement (see IPI Criminal 2d No. 23.04, at 272 (Supp. 1989)). There was no 1988 supplement and thus no "I.P.I. Criminal 2d 1988, 23.04 Modified." New instructions are often circulated in advance to acquaint the judiciary and legal profession with upcoming changes. Thus, the People's instruction No. 9 was not an outdated version of the DUI instruction at the time of defendant's trial.

■ Defendant's argument also fails simply because there are no effective dates for IPI instructions such as there are for statutes. While we believe that Supreme Court Rule 451(a) (107 Ill. 2d R. 451(a)) requires a trial court to use the latest version of a particular IPI instruction that may be applicable, use by a trial court of an earlier IPI version of that same instruction is not reversible error as long as the earlier version still correctly states the law. Drafting instructions is somewhat of an art, and changes in IPI instructions may be brought about because the committee believes a new version of an instruction is clearer or better stated. Yet the earlier version may still have been a correct statement of the law. In this analysis, we have taken into consideration the recent article by the chairman of the committee, stating his personal views. See Haddad, *The 1989 Supplement to the IPI Criminal: An Overview*, 77 Ill. B.J. 762 (1989).

■ Defendant's next contention concerning the instruction given is that it was ambiguous. The Illinois Supreme Court has held that an instruction may not be given if it misleads the jury. (*Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 392 N.E.2d 70.) Illinois pattern jury instructions must not be constructed so as to confuse or mislead the jury. (*Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692.) Even if an instruction correctly states the law, it may not be given if it misleads the jury. (*Graves*, 56 Ill. App. 3d at 879, 371 N.E.2d at 762.) However, even though it is improper for a court to instruct the jury in a confusing or misleading manner, if a commonsense interpretation of the challenged instruction would not be misleading or confusing, it may be said that the jury was fairly and comprehensibly informed on that issue. *Silverman v. General Motors Corp.* (1981), 99 Ill. App. 3d 593, 425 N.E.2d 1099.

IPI Criminal 2d No. 23.04, as submitted by the State, contains the following proposition: "That the defendant then was under the influence of alcohol." However, IPI Criminal 2d No. 23.04 reworded this proposition to read, "that at the time the defendant drove the vehicle, the defendant was under the influence of alcohol." Defendant objects to the language "that the defendant *then* was under the influence of alcohol." (Emphasis added.) Defendant argues that this language is ambiguous because the word "then" can have two meanings: (1) after, later; and (2) at that time. To find that defendant was driving under the influence, the State must prove that defendant drove a motor vehicle *at the time he was intoxicated. People v. Williams* (1972), 3 Ill. App. 3d 1036, 279 N.E.2d 735.

■ Defendant argues that the State's instruction would allow the jury to enter a finding of guilt even if it concluded that defendant did

not drive while intoxicated. Defendant claims that the jury might have convicted him because it found him to be intoxicated at the time the field sobriety tests were given, or at the time the warning to motorist was read to him at the station house, even if it concluded that defendant was not intoxicated at the time he drove. We disagree. Defendant was charged with DUI, not with being intoxicated sometime after he was driving. The jury was aware of this. Trooper Betts testified that defendant's driving was erratic and, when pulled over, defendant had trouble producing his license and standing up. Moreover, a version of IPI Criminal 2d No. 23.03, the DUI definition instruction, was also given. The instruction provided: "A person commits the offense of driving while under the influence of alcohol when he drives the vehicle while under the influence of alcohol." (IPI Criminal 2d No. 23.03, at 528.) A commonsense interpretation of the instruction is not confusing or misleading and leads us to conclude that the jury was fairly and comprehensibly instructed on the issue.

Defendant next argues that his constitutional and statutory rights to testify in his own defense were violated. The court sustained an objection by the State to the following question in the presence of the jury:

"Q. [By defense counsel:] Were you under the influence of alcohol at the time that you were driving the vehicle? I am not going to ask you about at the time of these tests, but at the time you were driving thevehicle?

A. [Defendant]: No.

[Prosecutor]: Objection, without foundation.

THE COURT: Sustained. The response is stricken, and the jury is instructed to disregard the response."

Defendant argues that the prosecution failed to state the item of foundation lacking and that the court's ruling prejudiced defendant by denying him his statutory and constitutional right to testify. A defendant in a criminal action has a statutory and constitutional right to testify in his own defense. (Ill. Rev. Stat. 1987, ch. 38, par. 155—1; *People v. Knox* (1978), 58 Ill. App. 3d 761, 374 N.E.2d 957; Ill. Const. 1970, art. I, §8.) Defendant claims he was denied the only opportunity to refute the arresting officer's testimony and that the court's denial of this testimony critically injured him by destroying any opportunity he may have had to convince the jury of the truthfulness of his testimony.

■■ We agree that the trial court erred when it sustained the State's objection to this question. A witness may testify directly to his own mental state. (*People v. Weil* (1910), 244 Ill. 176, 91 N.E. 112.) We believe this applies to testifying about one's sobriety or lack thereof.

However, we find the error to be harmless. Defendant answered questions that provided the same information as the stricken response. Defendant testified that he had no problem making a turn out of the bar; he did not stop and stall across two middle lanes; he neither stumbled nor walked unsteadily for his field sobriety tests; he had no difficulty driving his car when he left the bar's parking lot; he was not staggering; and denied that he could not hold his leg up for even one second. Defendant also answered three questions that were directly substituted for the question objected to. These three were:

"Q. [By defense counsel:] Were you having any difficulty driving that vehicle to the point that the trooper stopped you?

A. [Defendant:] No.

Q. Had you violated any laws, any traffic laws up to the time that the trooper had stopped you?

A. I didn't think I had.

Q. Were you ever charged with improper lane usage, reckless driving, having your headlights off, driving in the wrong lane?

A. No."

It appears that these three questions were directly and narrowly directed at defendant's driving ability up to the time the trooper stopped him. Therefore we cannot say that defendant's right to testify was violated.

■ Defendant also argues that the court's decision to sustain the objection to the question denied him effective assistance of counsel. This argument is without merit. For a denial of effective assistance of counsel claim, defendant must show that the deficient performance of counsel prejudiced the defense. This means defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Defendant cannot show that he would have prevailed if allowed to answer the question presented.

Defendant finally argues that improper juror conduct requires reversal and a new trial. Defendant claims that Theresa Stadel, a juror in defendant's trial, harbored doubt as to her fairness and impartiality because she knew that defendant had been arrested or convicted for DUI on prior occasions. Defendant further asserts that evidence shows Stadel may have shared this information with other members of the jury.

■ ■ Every person charged with a crime is entitled to a speedy public trial by an impartial jury. (U.S. Const., amend. VI.) To be qualified, a juror must come into a trial with a mind uncommitted on the

question of guilt or innocence of the defendant and prepared to weigh the evidence impartially. (*People v. Cravens* (1941), 375 Ill. 495, 31 N.E.2d 938.) If the existence of certain facts has been established in his mind, touching the guilt or innocence of the accused, to the extent of producing a conviction, he is disqualified, for neither party to the proceeding should be required to adduce proof to remove a preconceived opinion. Such would result in the trial before a juror who had prejudged the case. (*Cravens*, 375 Ill. at 497, 31 N.E.2d at 939.) However, mere suspicion of bias or partiality is not sufficient to disqualify a juror. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) The test used in such cases is whether the conduct involved such a probability that prejudice would result so that due process would be deemed inherently lacking. (*People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656.) Not every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial as to require reversal. *Holmes*, 69 Ill. 2d 507, 372 N.E.2d 656.

In the present case, Stadel stated to defendant's lawyer's secretary that it was a shame that the jury had to convict defendant, but in light of his prior convictions, they had to. Defendant included this statement in his post-trial motion for a new trial. Six jurors, including Stadel, were subpoenaed to testify at the hearing.

■ Attempts to impeach jury verdicts fall into two broad categories. The first category includes attempts to prove by a juror's testimony or affidavit the motive, method or process by which the jury reached its verdict. These are generally inadmissible in most jurisdictions. (*Holmes*, 69 Ill. 2d at 511-16, 372 N.E.2d at 658-60.) The second category includes situations in which the testimony or affidavit of a juror is offered as proof of conditions or events brought to the attention of the jury without any attempt to show its effect on the jurors' deliberations or mental processes. In Illinois, this second category may be used to impeach a jury verdict. *Holmes*, 69 Ill. 2d 507, 372 N.E.2d 656.

We first look at defendant's argument that the jury received improper information. Defendant cites a juror's written statement responding to an inquiry from defendant's counsel. The statement revealed that several members of the jury speculated that defendant could have had previous convictions. Defendant argues that this speculation, along with Stadel's knowledge of defendant's prior arrests or convictions, shows that Stadel shared her knowledge with the jury and that the jury was not impartial.

■ We believe the jury was impartial. Stadel testified, and the five other jurors subpoenaed confirmed, that she did not share her

knowledge of defendant with the rest of the jury. The five other jurors also testified that they had no knowledge of any prior arrests or convictions of defendant for DUI when they convicted him. The record does not support the argument that Stadel informed the members of the jury of defendant's past history of DUI.

We next turn to defendant's argument that Stadel was not an impartial juror because she thought defendant had prior convictions for DUI. Defendant cites *People v. Ortiz* (1926), 320 Ill. 205, 150 N.E. 708, in demanding a reversal and new trial. *Ortiz* is an extreme example of juror partiality in which one of the jurors stated, before a murder trial: " '[T]hey better not take me on that jury or I will hang that Mexican ***.' " (*Ortiz*, 320 Ill. at 212, 150 N.E. at 712.) The *Ortiz* court had no choice but to reverse and remand for a new trial because the juror misled the court by concealing his partiality during jury selection. Defendant claims that because Stadel knew defendant had been previously arrested or convicted for DUI, she was not impartial.

■■ Stadel knew only that defendant had some prior arrests or convictions that might have been alcohol related. During jury selection, Stadel indicated that she knew nothing that would affect her impartiality as a juror. Defendant's counsel was aware that Stadel was familiar with defendant, and lived in the same small town, but neither questioned her about such knowledge, nor objected to her presence on the jury. At the post-trial motion hearing Stadel once again indicated that her knowledge of defendant in no way affected her impartiality. The court in *Holmes* said it would not hold that every instance of extraneous or unauthorized information reaching the jury results in error so prejudicial as to require reversal. We conclude that Stadel's knowledge of defendant's prior arrests or convictions did not rise to the level of a due process violation. Defendant's argument is little more than speculation.

Defendant's efforts to show Stadel was in fact influenced by her knowledge of defendant's prior convictions attempt to impeach a juror's mental process in reaching a verdict and as such will not be allowed. For the foregoing reasons, the judgment is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.