(No. 31485.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HELEN STANKO, Plaintiff in Error.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

HARRY J. BUSCH, of Chicago, (MYER H. GLADSTONE, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, both of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is a writ of error to the criminal court of Cook County seeking to reverse a judgment sentencing the plaintiff in error, Helen Stanko, herein designated as defendant, to the Illinois Women's Reformatory for a term of from 5 to 10 years, based upon a verdict of a jury finding the defendant guilty of attempting to procure an abortion on one Clara Liepski.

The testimony of the prosecuting witness disclosed that she was advised by a physician on December 1, 1947, that she was pregnant. Thereafter, on December 8, 1947, she went to the home of the defendant and asked the defendant to examine her and was told that she was pregnant. The witness then told Mrs. Stanko that she wanted an abortion and was told by Mrs. Stanko that her fee would be $150, which sum she paid. It appears that the defendant then performed a brief operation consisting of inserting a length of rubber tube, commonly known as a catheter, into the uterus of the patient. The defendant then told Miss Liepski to return on the following morning and instructed her not to remove the tube. The witness then left the defendant's home and a few minutes thereafter was taken into custody by some police officers who took her to the office of a physician who examined her. This physician removed the catheter and ascertained that the witness was pregnant.

Prior to December 8, 1947, Miss Liepski was employed at a factory where she had been working about 2½ years. She was asked what her general physical condition was before December 8, 1947, and she replied, "It was all right." She further testified that about two weeks after December 8, 1947, she had a miscarriage which occurred after she slipped on the stairs where she lived and grabbed the banister and strained herself. She stated that she did not fall and that she did not go to a doctor nor to a hospital at the time of the miscarriage but took care of herself. She further testified that she did not insert any instrument or foreign matter into herself and she stated that she did not know what it was that caused her miscarriage or abortion and that she had not given birth to a child.

The physician who examined Clara Liepski on December 1, 1947, testified and gave his opinion that she was at that time pregnant. He did not testify as to her general physical condition. The doctor who examined Clara Liep-

ski after the alleged operation testified that she found a catheter which had been inserted about two or three inches into the uterus and that she removed the same. She further testified that she made an examination of the witness and that it was her opinion that the witness was then pregnant. She did not testify as to the physical condition of the witness.

The defendant presented testimony by a fully qualified and respected obstetrician who had taught obstetrics and gynecology at Northwestern University Medical School for 22 years and was chief of the obstetrical department at Illinois Central Hospital, who testified that it was his opinion that the miscarriage of Clara Liepski was caused by the insertion of the catheter. He further, on cross-examination, stated that it was highly improbable that the slip on the stairs would disturb the uterus enough so as to cause a miscarriage. No witness was called by the People nor any testimony offered to rebut this doctor's testimony.

The defendant was indicted for the crime of attempting to produce an abortion on Clara Liepski and the case was tried upon that theory. The defendant has assigned numerous errors committed at the trial, the first error being that since the indictment charged the defendant with an attempt to perform an abortion and the proof showed a completed abortion there was a fatal variance between the charge and the proof and that the court should have directed the jury to return a verdict finding the defendant not guilty of the charge of attempting to produce an abortion.

We do not believe it necessary to discuss the other evidence presented as to similar offenses by the defendant nor to discuss the other errors assigned by the defendant, because it is our opinion that there was a fatal variance between the charge and the proof.

Under our statute, causing an abortion and attempting to procure an abortion are separate and distinct offenses.

*People* v. *Hagenow,* 334 Ill. 341; *People* v. *Heisler,* 300 Ill. 98; *Clark* v. *People,* 224 Ill. 554.

A careful review of the evidence indicates without question that Miss Liepski aborted. The testimony in the record that she aborted as a result of the operation performed by the defendant is undisputed. We, therefore, must conclude that the proof did not sustain the charge of an attempt to procure an abortion and the variance is fatal. This case is similar to the case of *People* v. *Heisler,* 300 Ill. 98, wherein the defendant was convicted of the crime of murder by abortion. A physician testified that he made a post-mortem examination of the deceased and found in the womb a small fetus of two months' growth. A physician testified that it was his opinion that death resulted from blood poisoning following an attempted abortion. In that case we stated, "To cause a woman to abort or miscarry and to attempt to procure or produce an abortion or miscarriage are separate and distinct offenses. (*Clark* v. *People,* 224 Ill. 554.) This conviction of the plaintiff in error for murder by abortion would not be a bar to the prosecution of her for murder by an attempt to produce an abortion. She is charged in the indictment with murder by abortion, and the proof shows clearly that no abortion was produced. The variance between the charge and the proof is fatal."

A defendant, whether guilty or innocent, is entitled to a fair, orderly and impartial trial in accordance with our laws. In order to sustain a conviction it is necessary that the defendant be proved guilty of the crime charged and not of an entirely different crime. While it appears from this record that perhaps the conduct of the defendant might indicate her having committed some illegal act, she cannot be convicted of the crime of attempting to produce an abortion where the proof shows that she, in fact, produced an abortion. Under our system of jurisprudence, there is

not one form of trial for a guilty person and a different form for an innocent person.

Because of the fatal variance between the charge and the proof, we are compelled to reverse the judgment of the criminal court of Cook County.

*Judgment reversed.*