(No. 40050.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PHILIP KURTZ *et al.,* Appellants.

*Opinion filed March 29, 1967.*

Meyer & Meyer, of Belleville, or appellants.

William G. Clark, Attorney General, of Springfield, and Douglas Marti, State's Attorney, of Greenville, (Fred G. Leach, Assistant Attorney General, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

The defendants, Philip Kurtz, Larry C. Irving and James H. Grogan, were convicted of the theft of an automobile which a jury in the circuit court of Bond County found to have had a value in excess of $150. Kurtz and Grogan received sentences for terms of not less than five nor more than ten years and Irving for not less than one year nor more than two years.

The defendants appealed to the Appellate Court for the

Fifth District and urged *inter alia* that the State failed to prove that the automobile in question was of a value in excess of $150, and that the trial court had erred in denying the defendants' motions for a change of venue and for a continuance. These motions had been based on two allegedly prejudicial articles concerning the defendants which had been published in a local newspaper prior to trial.

The appellate court held (69 Ill. App. 2d 282) that the People's evidence that the automobile involved was of a value in excess of $150 was insufficient, and under section 121—9 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 121—9), the court modified the judgment. of the trial court in that it reduced the degree of theft of which the defendants had been convicted. Also, the sentences imposed by the trial court were vacated and the cause was remanded to the circuit court of Bond County with directions to impose upon each defendant a fine of $500 and a sentence of one year.

The appellate court, with one judge dissenting, held that the trial court did not abuse its discretion when it denied the defendants' motion for a continuance because of the newspaper articles concerning the case which had been published prior to the trial.

We granted defendants' petition for leave to appeal to this court.

Now, the defendants renew their argument that the trial court erred in denying their motions for a change of venue and for a continuance. They argue too, that the People failed to prove that the automobile was of a value in excess of $150, and that the appellate court should have reversed the cause because of the asserted failure of the People to prove a fair cash market value of the automobile.

The People deny that the publicity the case received was such as to impair the fairness of the defendants' trial. The People argue that the value of the automobile was properly proved to have been in excess of $150. It is urged that

should this court rule that it was not sufficiently proved that the value of the automobile was in excess of $150 that the cause should be remanded to the trial court for sentencing. This remanding is sought by the People because, it is stated, the criminal records of the defendants or certain of them do not appear in the record, and our attention is invited to section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1965, chap. 38, par. 16—1), which provides in part that one convicted of a theft of property not exceeding a value of $150 may be imprisoned from one to five years if such a person had a prior conviction for theft.

Section 114—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 114—6) provides that a motion for a change of place of trial "shall be in writing and supported by affidavit which shall state facts showing the nature of the prejudice alleged." Here, the defendants' motion for a change of place of trial, based on the two news articles, was made orally, and so it was properly denied.

The first article was published shortly after the offense concerned, approximately eleven months prior to the trial of the defendants. The article quoted the local sheriff to the effect that he was satisfied that the defendants were the three men for whom a posse of about twenty-five men had searched the preceding day. He was quoted also as stating that the defendants had secreted themselves in the underbrush and later had appropriated the automobile in question. The article stated that the defendants in "low tones" had waived a preliminary hearing. The publication identified two Madison County deputy sheriffs who were described as waiting in the courtroom corridors to serve the defendants with warrants on a charge of robbery. The article stated that the defendants were charged with a robbery in Alton where they had been surprised by a watchman.

The second publication appeared on March 11, 1965, three days prior to the trial. Its caption read "Auto theft case set for Monday." It stated that the defendants had been

arrested after a search which commenced on the afternoon preceding the day of arrest. It related that the defendants had been sought in connection with the robbery in Alton and that they had eluded officers in the underbrush. It went on to state that the defendants were under indictment, that bond had been set at $10,000 and that the defendants at arraignment had denied the theft. The article said that defendants' had a story that a man loaned them the automobile and told them to leave it on Route 66 near Springfield when they completed their use of the car.

The publisher testified that the newspaper was published twice weekly in Bond County; that the average circulation per issue was 4555 and that the circulation of the March 11, 1965, issue was 4681. He testified that 4027 of the 4681 papers had gone to Bond County residents and that his paper had been sent to 45 of the 60 persons on the original jury list.

Sixty-one persons were examined in the selection of the jury. Fifty of them had read of the case in a newspaper; nine were excused and not questioned as to whether they had read of the case and two persons stated they had not read of the case. Eleven of the twelve jurors and an alternate juror stated that they had read of the case; one juror did not recall reading of the case and the other juror was not questioned as to whether she had read of the case. All the jurors denied having formed any impression of the defendants' innocence or guilt from the news accounts, and each juror stated that he or she knew of no reason why he or she could not serve as a fair and impartial juror in the case. The examination of the jurors on the question of the publications was, in large part, conducted by the trial court. As the State observes in its brief, the defendants were entitled to 33 peremptory challenges. Only 18 peremptory challenges were exercised.

An accused has a manifest right to a trial by an impartial jury under the United States constitution (sixth

amendment) and under the constitution of this State. Art. II, sec. 9.

Section 114—4(b)(5) of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 114—4(b)(5)) provides that a continuance may be granted when "Pre-trial publicity concerning the case has caused a prejudice against defendant on the part of the community." Whether a motion for a continuance should be granted because of publicity concerning the case resides within the sound discretion of the trial court. (*People* v. *Brinn,* 32 Ill.2d 232.) When an abuse of discretion by the trial court is not found, a court of review will not disturb the trial court's judgment. *People* v. *Brinn,* 32 Ill.2d 232; *People* v. *Malmenato,* 14 Ill.2d 52, and *People* v. *Marsh,* 403 Ill. 81.

The examination of prospective jurors on *voir dire* is, in a typical instance of pretrial publicity, probably the most valuable means of ascertaining partiality or indifference among persons summoned as jurors. The careful examination here did not disclose any prejudice on the part of any juror. Considering the record before us, including the news articles in question, it cannot be said that a prejudice had been generated against the defendants on the part of the community.

In *People* v. *Brinn,* 32 Ill.2d 232, we said at p. 236:

"When the last of the twelve jurors was accepted the defendants had twenty peremptory challenges remaining. On the basis of the entire record on *voir dire* examination, we do not believe that the defendants have shown such a pervasive prejudice created by pretrial publicity that would prevent the selection of an impartial jury. The fact that defendants did not challenge any of the jurors selected is strong evidence that they were convinced that the jurors were impartial and unbiased. *Beck* v. *Washington,* 369 U.S. 541, 8 L. Ed. 2d 98.

"It therefore follows that the trial judge did not abuse

his discretion in denying defendants' pretrial motions in relation to prejudicial publicity."

Here, too, for like reasons there was no abuse of discretion by the trial court.

*Irvin* v. *Dowd,* 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751, was a case in which the Supreme Court held that the highly prejudicial publicity had so infected the community of trial that the defendant had been deprived of a fair trial. However, in that case the Supreme Court realistically commented: "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 366 U.S. 717, 722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751, 756.

Here, of course, the jurors declared themselves to be indifferent and denied having any pretrial notion of guilt or innocence. The news articles here, while offensive to the concept of a fair trial, were not inflammatory as in *People* v. *Hryciuk,* 5 Ill.2d 176, cited by defendants, so as to require a holding of presumed prejudice despite the jurors' avowals of impartiality.

The authority of *People* v. *Murawski,* 394 Ill. 236, which is also cited by the defendants is not in point. There, during a trial for the crime of abortion the defendant was described in a news story as having been indicted on three

prior occasions for abortion. The information apparently was furnished the newspaper by the prosecutor's office. The jurors were not admonished by instruction or otherwise that they could not properly consider anything they might have read of the case in the newspapers. The record showed that jurors had access to the newspaper in which the article appeared. We held there that the defendant had been deprived of a fair trial. The facts here are readily distinguishable.

We cannot entertain the State's arguments that the automobile involved was proved to be of a value in excess of $150 or that the appellate court should have remanded this cause to the trial court for sentencing. Although there was no formal effort to cross-appeal to this court the State is in the posture of an appellant in urging here that the appellate court erred. The right of the State to appeal is limited. Ill. Rev. Stat. 1965, chap. 38, par. 120—1; chap. 110, par. 101.27 (former Supreme Court Rule 27); *People v. Ritchie,* 36 Ill.2d 392.

Former Supreme Court Rule 27 which governed at the time of the appeal provided in part: "(4). In criminal cases the State may appeal only from an order or judgment, the substantive effect of which results in dismissing an indictment, information or complaint; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." We hold that the action taken by the appellate court here was not an order or judgment from which the State can appeal.

We deem that the defendants' argument that the appellate court should have reversed because of the failure of the State to prove a fair cash market value of the automobile is without merit. It is true that in *People* v. *Rose,* 19 Ill.2d 292, we held that in order to establish a felony the statutory value must be proved (over $150 under the present statute, Ill. Rev. Stat. 1965, chap. 38, par 16—1); and this is accomplished by proving the fair cash market value

at the time and place of the theft. (*People* v. *Stewart*, 20 Ill.2d 387.) But a theft of property of lesser value is a misdemeanor. Property is anything of value. (Ill. Rev. Stat. 1965, chap. 38, par. 15—1.) The automobile herein was described in the record as a 1959 four-door Ford which was found to have been taken and driven by the defendants. It had an actual value whether it had a market value or not and was the subject of larceny. (*People* v. *Wilson*, 298 Ill. 257.) The evidence was sufficient to support a conviction of taking property of value not exceeding $150.

Section 121—9 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 121—9) provides in part: "On appeal the reviewing court may: * * * (3) Reduce the degree of the offense of which the appellant was convicted; (4) Reduce the punishment imposed by the trial court; * * *."

Here, the appellate court found that the State's evidence that the automobile was of a value in excess of $150 was insufficient and stated that it was proceeding "to reduce the degree of the offense of which these defendants are clearly guilty and impose appropriate punishment." (*People* v. *Kurtz*, 69 Ill. App. 2d 282.) The authority of the appellate court to reduce the degree of the offense of which these defendants stood convicted is clear. It is not as evident, however, under the circumstances, that the appellate court was reducing "the punishment imposed by the trial court" when it acted to "impose appropriate punishment," although undeniably the defendants' punishments so far as confinement was concerned were to be lessened. Too, the fines to be imposed represented a different character of punishment. It is unnecessary, however, to pass on this question as we hold on another ground that the appellate court should have remanded to the trial court for resentencing. We believe that for the purpose of imposing appropriate punishment the trial court is ordinarily in a position superior to a court of review. (*People* v. *Taylor*, 33 Ill.2d 417.) This is par-

ticularly true when a record, as here, provides scanty or no information concerning the backgrounds of the convicted.

Accordingly, we affirm the judgment of the appellate court with respect to its findings that the pretrial publicity, under the circumstances here, did not deprive the defendants of a fair trial, and that the defendants were guilty of theft of property not exceeding $150 in value. However, we reverse the judgment of the appellate court insofar as it directs the punishment to be imposed upon the defendants, and we remand the cause to the circuit court of Bond County for resentencing consistent with this opinion.

*Affirmed in part and*
*reversed in part and*
*remanded, with directions.*