(No. 40524.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
CHARLES B. HARRIS, Appellant.

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

ROBERT H. RICE, of East St. Louis, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLARD C. PEARCE, State's Attorney, of Fairfield, (FRED G. LEACH, Assistant Attorney General, and RICHARD C. COCHRAN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

A jury in the circuit court of Wayne County found defendant Charles B. Harris guilty of the murder of Betty Newton, the murder of William Meritt, and arson. He was sentenced by the court for a term of 60 to 75 years for each murder and for a term of 10 to 15 years for the arson, the sentences to run concurrently.

The defendant concedes that there is sufficient evidence to support the conviction. William Meritt had testified against Harris in a previous murder case in Wayne County

and Betty Newton was a former girl friend of Harris who had forsaken him for William Meritt. Harris had told several people he would kill both of them if he caught them together. The night before the murders Harris was drinking and told some people that if he caught Betty Newton and William Meritt at the Courtney Meritt house, an abandoned farm house they frequented, he was going to kill them and burn the house down to destroy the evidence. Later that evening he had James and Mary Wood drive him several places looking for Betty, but they refused to take him to the Courtney Meritt house. They let him out at his home about 2:00 A.M. Between 6:00 A.M. and 7:00 A.M. he was seen driving his automobile on two round trips on the road between his home and the Courtney Meritt house. A short time later the Courtney Meritt house was on fire. The badly burned remains of Betty Newton and William Meritt were found inside. They had both died prior to the fire from gun shot wounds in the head. Defendant's housekeeper, at his direction, destroyed his white shirt with quite a bit of blood on it the morning of the fire. He also owned a gun of the type used in the murders. Defendant was apprehended 9 months after he was indicted, by the FBI, on a charge of unlawful flight to avoid prosecution for murder.

He first argues that the trial court erred in denying his application for bail. Section 110—4(a) of the Code of Criminal Procedure provides that "All persons shall be bailable before conviction, except when death is a possible punishment for the offenses charged and the proof is evident or the presumption is great that the person is guilty of the offense." The section further provides that "(b) A person charged with an offense for which death is ·a possible punishment has the burden of proof that he should be admitted to bail." Ill. Rev. Stat. 1965, chap. 38, par. 110—4.

Defendant's application for bail was supported by his affidavit that he was not guilty of the offense charged and the prosecution offered no evidence. His theory is that

where the prosecution puts forth no evidence and the defendant offers exculpatory evidence, bail must be granted. (We by no means intimate that defendant's conclusionary statement that he did not commit the crimes constitutes exculpatory evidence.)

Our research has produced only one case where review of an order denying bail prior to trial was sought after trial and conviction. In that case (*State* v. *Sheppard,* 100 Ohio App. 345, (aff'd 165 Ohio St. 293, *cert.* den. 352 U.S. 910, reh. den. 352 U.S. 955),) the Ohio appellate court simply stated, "* * * such ruling cannot now be raised after trial and conviction." The basis for such a holding is the obvious fact that to be effective, review of such an order should precede trial and conviction. Defendant makes no claim that his conviction was in any manner affected by the denial of bail, such as depriving him of an opportunity to prepare for trial. Under these circumstances the purpose of bail could not be accomplished by now reversing the order denying bail.

Defendant argues, nevertheless, that he was denied a constitutional right and that this is his first opportunity to raise the issue for review. An order denying bail is, of course, interlocutory and not appealable (*Lynch* v. *People,* 38 Ill. 494) ; but the issue could have been raised by *habeas corpus.* (*People ex rel. Sammons* v. *Snow,* 340 Ill. 464; *People ex rel. Smith* v. *Blaylock,* 357 Ill. 23.) Both as a practical matter and a procedural matter, review of an order denying bail must be raised prior to trial and conviction.

Defendant next argues that the trial court's refusal of challenge for cause against juror Charles Owen deprived him of his right to trial by an impartial jury. He points out that Owen is manager of House and Home Improvement, a subsidiary of Southern Illinois Lumber Company, and that the State's Attorney is the attorney for Southern Illinois Lumber; that Owen knew he was the attorney for Southern Illinois Lumber; that Owen said he would em-

ploy the State's Attorney if he needed a lawyer for this business; that Owen had done some work in the State's Attorney's home and in the home of the assistant State's Attorney; and that Owen was a member of the Elks Club of which he thought the State's Attorney was also a member and had been a member of the Lions Club of which the assistant State's Attorney had been a member. The prosecution points out that neither the State's Attorney nor the assistant State's Attorney had ever represented Owen or his business; that Owen had not visited either of them socially; that it would not embarrass Owen to return a not guilty verdict; that he had no opinion of the guilt or innocence of defendant; that he would not give more weight to the views of the State's Attorney or the assistant State's Attorney than the lawyers for defendant; and that if he were a defendant in a murder case, he would be willing to accept a juror in the same frame of mind as he was.

If a juror meets the statutory qualifications, the determination of whether a challenge for cause should be allowed rests within the sound discretion of the trial court and his ruling will not be disturbed unless he has clearly abused his discretion. (I.L.P., Juries, § 101.) A reading of the *voir dire* examination convinces us that the trial court did not abuse his discretion in finding Owen to be an impartial juror.

It is then contended that the trial court erred in allowing only 20 peremptory challenges rather than 50. Defendant was tried on three indictments—one for the murder of William Meritt, one for the murder of Betty Newton and one for the arson of the Courtney Meritt home. Section 115—4(e) of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 115—4(e),) provides, "Each defendant shall be allowed 20 peremptory challenges in capital cases, 10 in all cases in which the punishment may be imprisonment in the penitentiary, and 5 in all other cases." Defendant asserts that he should have been allowed 20 per-

emptory challenges for each murder indictment and 10 for the arson indictment.

The question here presented is one of first impression and is undoubtedly the result of the enactment of section 3—3(b) of the Criminal Code of 1961. (Ill. Rev. Stat. 1965, chap. 38, par. 3—3(b).) That section provides, "If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution * * * if they are based on the same act." Prior to the enactment of this section it was common practice for· a prosecuting attorney to try separately indictments arising from the same act (see Committee Comments, Smith-Hurd Illinois Annoted Statutes, chap. 38, par. 3—3, pp. 124-131), and the question did not arise as to whether a single defendant could cumulate his peremptory challenges in a single trial on several indictments.

In the recent case of *People* v. *West,* 80 Ill. App. 2d 59, the appellate court held that a defendant could not cumulate his peremptory challenges under section 115—4(e) and stated: "We believe that the legislative intent in using the word 'cases' was to describe the various types of offenses which would subject the defendant to capital punishment or imprisonment in the penitentiary or other punishment. If the legislature had intended to allow the number of challenges to correspond to the number of indictments being tried, it would have used the word 'indictments' or 'offenses'." (80 Ill. App. 2d 59, 64.) After the decision in the *West* case, section 115—4(e) was amended and now provides, "If several charges against a defendant or defendants are consolidated for trial, each defendant shall be allowed peremptory challenges upon one charge only, which single charge shall be the charge against the defendant authorizing the greatest maximum penalty." Ill. Rev. Stat. 1967, chap. 38, par. 115—4.

The legislative intent that the number of peremptory challenges authorized in section 115—4(e) should apply to each defendant in a single case, and not to each defendant on each indictment in the case, seems clear enough from the language used prior to amendment as the appellate court held in *West*. The amendment, of course, removes any doubt as to the legislative intent. We hold that the trial court did not err in limiting defendant to 20 peremptory challenges.

Defendant also contends that the trial court erred in admitting in evidence photographs of the torsos. and heads of the murder victims and X rays of the victims. He asserts that these exhibits only had the effect of inflaming the jury and did not aid in any material manner in resolving the issues in the case.

One of the issues was the identity of the victims and the photographs showed the difficulty of visual identification. They also showed defendant had executed his plan in the manner he said that he would and attempted to destroy all evidence as he had said he would. The X rays illustrated the testimony of the autopsy surgeon. We believe that the photographs and X rays were material in resolving issues in the case and that the trial judge did not abuse his discretion in admitting these exhibits.

Defendant's final objection is that he was denied a fair trial when the State's Attorney asked him if he had been convicted of a felony. (See *People* v. *Donaldson,* 8 Ill.2d 510.) The record shows that the objection was made before defendant answered the question and the court then held a conference in chambers. The State's Attorney made an offer of proof of an authenticated copy of a conviction of a felony. The court refused the offer of proof, sustained objection to the question and instructed the jury to disregard the question.

In *People* v. *Neukom,* 16 Ill.2d 340, we held that introduction of the authenticated copy of the record of convic-

tion cured any objection to cross-examination with regard to the prior offense. (See also, *People* v. *Squires,* 27 Ill.2d 518.) Here it is defendant who has objected to introduction of the authenticated copy of conviction of a felony which would under *Neukom* and *Squires* have cured any objection to the cross-examination by the State's Attorney. Furthermore, cross-examination concerning the prior conviction was not permitted by the court as in the *Donaldson* case.

While defendant has complained that Owen should have been excused for cause as a juror, that inflammatory photographs were admitted in evidence and that the State's Attorney asked a prejudicial question, we feel that he could not have been prejudiced. It is noted that there was sufficient evidence, even by defendant's own admission, to support the conviction, and that the jury did not recommend the death sentence or fix the sentence. We are of the opinion that defendant received a fair trial.

The judgment of the circuit court of Wayne County is affirmed.

*Judgment affirmed.*