THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STUART COLE, a/k/a STUART KOL, Defendant-Appellant.

(No. 11111;

Fourth District—June 24, 1971.

*Rehearing denied July 30, 1971.*

TRAPP, J., dissenting.

Robert Weiner, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Robert J. Steigmann and Richard A. Frandsen, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHOLZ delivered the opinion of the court:

The defendant appeals from his conviction of murder in a jury trial. A sentence of fifty to seventy-five years was imposed.

In his brief, the defendant asserts eight areas of review to be considered by this court. We need discuss only two of these issues—first, the impartiality of the jury, and second, because of our decision, the question of search and seizure.

In the court of the *voir dire* examination, the defendant exhausted his peremptory challenges. Subsequent thereto a prospective juror, Russell Davis, was examined as one of a panel of four. Davis was a lifelong resident of Sangamon County, whose wife was employed in the courthouse as a deputy of the Board of Review; whose son was employed as a civil engineer for the State of Illinois in the Highway Department; who had heard about the case through the news media; who had known the State's Attorney and his assistant for a number of years; who had worked for the State's Attorney in his campaign; who was a witness for the State's Attorney in a case in which he was privately employed; who was acquainted with one of the decedents and had conversed with him on the telephone; who had lived next door to a doctor who was a material witness and who also had been the juror's family doctor for a number of years; who indicated he had known the assistant State's Attorney "way back"; whose youngest son was married to a sister of a witness; who was related to another witness; who was personally acquainted with Edward Ryan, a material witness, and the sheriff of the county; who had served as treasurer of the campaign for Ryan; who had discussed this case with Ryan; and who obviously was a man well-acquainted with Springfield, its environs, its citizens and its "happenings".

Mr. Davis, throughout his *voir dire* examination, indicated concern about his service, as evidenced by certain of his answers:

"Q. Mr. Davis, in response to the question by the Court that you would not permit this relationship we might have had as when you testified as a witness at a prior hearing, this would not interfere with your duties

as a juror if you are selected and you would render a fair and impartial verdict in this case, is that correct?

A. I'm only human, but I would attempt not to, yes.

\* \* \*

Q. And if you were chosen as a juror, Mr. Davis, I'm sure that you would set aside any acquaintanceship that you might have had with me or Mr. Hollis in deliberating in this case?

A. I could do that, but I just wonder what the public would think."

\* \* \*

Before examining the panel containing the juror Davis, the attorney for the defendant attempted to have Davis excused for cause. After a hearing in chambers, the court denied the challenge for cause and stated:

"You put the Court in a position here that a man has made all the tests that is prescribed by law and if this Court were to dismiss this juror for challenge for cause it would be indicating that the Court would be not accepting what he said here."

After the court denied the challenge, the attorney for the defendant, aware that his peremptory challenges were exhausted, attempted to present himself and the defendant as favorably as possible in the eyes of not only the juror Davis, but the venire as well.

■■ This trial tactic is not a waiver of the defendant's right to object to the jury as selected.

Section 9 of Art. II of the Constitution of 1870, Ill. Rev. Stat. (1969), guarantees:

"In all criminal prosecutions the accused shall have the right to \* \* \* a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

In *People v. Cravens* (1941), 375 Ill. 495, 497; 31 N.E.2d 938, 939, the Supreme Court said:

"It has often been stated by this court that great care should be exercised to preserve that constitutional right to a defendant, be he guilty or innocent. A juror, to be qualified, must come into the trial of the case with a mind uncommitted on the question of guilt or innocence of the defendant and prepared to weigh the evidence impartially \* \* \*."

The court went on to say:

"It was a cardinal rule at common law that jurors, to be qualified as impartial, should stand indifferent between the parties and be wholly free from even the suspicion of bias \* \* \*." At 497; 31 N.E.2d at 939.

■■ The guarantee of trial by jury insures to a defendant in a criminal

case the right to have the facts in controversy determined by twelve impartial jurors. *People v. Ward,* 32 Ill.2d 253; 204 N.E.2d 741, *cert. denied,* 384 U.S. 1022; 86 S.Ct. 1947, 16 L.Ed.2d 1026 (1966); *People v. Kolep* (1963), 29 Ill.2d 116; 193 N.E.2d 753.

Our Supreme Court has said:

"The examination of prospective jurors on *voir dire* is, in a typical instance of pretrial publicity, probably the most valuable means of ascertaining partiality or indifference among persons summoned as jurors." *People v. Kurtz* (1967), 37 Ill.2d 103, 108; 224 N.E.2d 817, 820; *People v. Gendron* (1969), 41 Ill.2d 351, 355; 243 N.E.2d 208, 211.

● 3   If a juror meets the statutory qualifications, the determination of whether a challenge for cause should be allowed rests within the sound discretion of the trial court, and his ruling will not be disturbed unless he has clearly abused his discretion. *People v. Harris* (1968), 38 Ill.2d 552; 232 N.E.2d 721.

*People v. Ward* and *People v. Cesarz* (1970), 44 Ill.2d 180; 255 N.E.2d 1 are two cases in which the court followed the basic rules as stated herein and then gave individual attention to the case as to whether or not there was abuse of discretion. In the *Ward* case, that which the court called a "serious objection" was the fact that one of the jurors was found, after the trial of the cause, to be a special deputy sheriff. The court found that this was a courtesy appointment without compensation and without the individual functioning as a deputy. In conclusion, the court said:

"On careful consideration we think the presence of this individual on the jury was not sufficiently prejudicial to warrant reversal." *People v. Ward,* 32 Ill.2d at 258; 204 N.E.2d at 744.

In the *Cesarz* case, the court considered three jurors whose qualifications the appellant raised on appeal. Two of the jurors were excused peremptorily, and the defense counsel attempted to excuse one juror for cause. This occurred after his peremptory challenges were exhausted and the court concluded, "We do not believe that the court was required to sustain defendant's challenge for cause as to this juror." *People v. Cesarz,* 44 Ill.2d at 189; 255 N.E.2d at 6.

In the *Cesarz* case, Justice Schaefer strongly dissented, quoting from *United States v. Wood,* 299 U.S. 123, 145; 57 S.Ct. 177, 81 L.Ed. 78, 88, in stating:

"The determination of whether or not a juror can be impartial must be based on human experience which recognizes that influences can operate even though they are not consciously present."

In *State v. Jackson,* 43 N.J. 148; 203 A.2d 1; 11 A.L.R.3d 841, *cert. denied,* 379 U.S. 982; 85 S.Ct. 690; 13 L.Ed.2d 572 (1965), there is an

excellent discussion of the historical background of juries and the requirements of impartiality. The Supreme Court of New Jersey examined all of the authority available throughout the States and to quote in detail from their opinion would unduly prolong this opinion. They did, however, quote from Judge Murrah in *United States v. Chapman* (10 Cir. 1946), 158 F.2d 417, 421, in which Judge Murrah said: "It is said that when a juror testifies that he believes he can, and the court finds as a matter of fact that he will, if selected, render an impartial verdict on the evidence, he is an impartial juror as required by the law. [Citing case.] A juror's answer to questions touching his state of mind is primary evidence of his competency, but the ultimate question is a judicial one for the court to decide, and in case of doubt, justice demands that the challenge be allowed. [Citing cases.]  *  *  *." The New Jersey court also quoted from the Florida Supreme Court, which said: "*  *  * if there is question as to the juror's 'sense of fairness or his mental integrity,' he should be excused and that '[i]f error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors'." (*Johnson v. Reynolds* (1929), 97 Fla. 591; 121 So. 793, 796.) In conclusion the New Jersey court said: "We, of course, recognize that the trial court is vested with broad discetionary powers in determining the qualifications of jurors and that its exercise of discretion will ordinarily not be disturbed on appeal. [Citing cases.]" *State v. Jackson,* 11 A.L.R.3d at 850—851.

This court, in *People v. Tillman* (4th Dist. 1969), 116 Ill.App.2d 24; 253 N.E.2d 873, recognized the law stated in this opinion and further established that each case should be determined on its individual merits. The court reviewed *People v. Kirkpatrick* (1953), 413 Ill. 595; 110 N.E.2d 519; *People v. Ortiz* (1926), 320 Ill. 205; 150 N.E. 708, and *People v. Gold,* 38 Ill.2d 510; 232 N.E.2d 702, *cert. denied,* 392 U.S. 940; 88 S.Ct. 2317; 20 L.Ed.2d 1400 (1968), and *People v. Harris,* 38 Ill.2d 552; 232 N.E.2d 721. It distinguished between each of these cases and the *Tillman* case, and held that there had been no clear abuse of discretion.

"*  *  * justice must satisfy the appearance of justice." *Offutt v. United States* (1954), 348 U.S. 11; 75 S.Ct. 11; 99 L.Ed. 11, 16.

■■ We hold that not only should a juror be impartial but he should appear to be impartial from all objective criteria in order that justice be done. The juror should have propounded to him certain questions and answers to those questions should be elicited from him. Those answers and his subjective criteria should not control his acceptance or rejection by the court under a challenge for cause, but should only serve as a portion of the criteria on which the discretion of the court should be

based. The ultimate decision as to the allowance or denial of a challenge for cause is that of the judge presiding at the trial and not that of the juror.

To paraphrase *Offutt*, impartiality must satisfy the appearance of impartiality.

■■ In this case, while no single item is necessarily controlling, the cumulative effect of Davis' relationship with sheriff, prosecutors, witnesses and others required the allowance of the challenge for cause.

Davis may have possessed the impartiality that is required by our law, but for a person bearing the relationships, having the acquaintanceships and being as involved as was Davis, he would have to be an extraordinary man. We do not believe that the law permits, in insuring to all trial by an impartial jury of their peers, that a juror thus encumbered be allowed to serve over valid objection.

Having concluded that it was error to deny the challenge for cause, we now turn to consider the question of whether such error can be deemed harmless, and therefore, not requiring a reversal of the conviction and a remandment for a new trial. In *Chapman v. California* (1967), 386 U.S. 18; 87 S.Ct. 1283; 18 L.Ed.2d 241, reh. denied, 386 U.S. 987; 87 S.Ct. 824; 17 L.Ed.2d 705, the United States Supreme Court fashioned rules with reference to the doctrine of harmless error as it relates to State-court proceedings. At issue there was the continuous and repeated references by the prosecutor to the defendant's failure to testify.

■■ In his concurring opinion, Mr. Justice Stewart noted certain areas wherein violation of constitutionally protected rights were not to be considered as harmless. Thus, an involuntary confession introduced at trial cannot be considered as harmless error. (*Lynumn v. Illinois* (1963), 372 U.S. 528; 83 S.Ct. 917; 9 L.Ed.2d 922.) Such is true even if the confession is completely unnecessary to the conviction. (*Haynes v. Washington* (1963), 373 U.S. 503; 518—519; 83 S.Ct. 1336; 10 L.Ed.2d 513, 523—524.) The right to counsel has been described as "too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (*Glasser v. United States*, 315 U.S. 60, 76; 62 S.Ct. 457; 86 L.Ed. 680, 702.) Other illustrations given by Mr. Justice Stewart relate to cases where a defendant is tried in a community that has been exposed to publicity highly adverse to the defendant, where the jury is instructed in an unconstitutional presumption, or where the trial judge's remuneration is based on a scheme giving him a financial interest in the result. Likewise, outright reversal is required without reference to a showing of prejudice where the selection of the grand and petit jurors turns on any showing of prejudice to the defendant. Thus, while error can be harmless, it is clearly established in *Chapman* and the

many cases referring to it, that basic and fundamental constitutional protections are not to be eroded as harmless error.

A defendant, whether guilty or innocent, is entitled to a fair, orderly and impartial trial in accordance with our laws. Under our system of jurisprudence, there is not one form of trial for a guilty person, and a different form for an innocent person. *People v. Kalpak*, 10 Ill.2d 411; 140 N.E.2d 726; *People v. Galloway*, 7 Ill.2d 527; 131 N.E.2d 474; *People v. Stanko*, 407 Ill. 624; 95 N.E.2d 861.

The right to a jury trial by an impartial jury under the Constitution of Illinois, or of the United States, is a basic requirement of due process and must be safeguarded with vigilance. Having concluded that there was error in denying the challenge for cause as to the juror Davis, we reverse this conviction and remand this case to the Circuit Court of Sangamon County for a new trial.

Upon retrial, it is clear that certain evidentiary issues will again arise, and it is appropriate that these be considered in connection with this appeal.

Certain items of evidence were seized at the time of the defendant's arrest and subsequent thereto. The trial court overruled the motion to suppress items of evidence taken on April 28, 1967, on the basis that such evidence seized was incident to a lawful arrest and was in "open view". The court sustained the motion to suppress as it pertained to items taken as evidence on April 29, 1967. A careful examination of this case indicates that the only question in regard to search and seizure that should be considered by this Court prior to remand is the seizure of certain items on April 28, 1967.

The Court, pursuant to our previous discussion of harmless error, has concluded that the admission into evidence of those items seized on April 28, 1967, was not reversible error but merely harmless error. In light of the remand, we direct our attention to this question only because of the necessity of affording to the trial court, on retrial, our direction.

The Court has not considered the case of *Chimel v. California*, 395 U.S. 752; 23 L.Ed.2d 685; 89 S.Ct. 2034, because of the holding by the Supreme Court of the United States in *Williams v. United States*, 39, L.W. 4368, that *Chimel* decided on June 23, 1969, was not to be given retroactive effect.

In considering the admissibility of the items seized on April 28, 1967, the Court has considered *United States v. Rabinowitz*, 339 U.S. 56; 94 L.Ed. 653 and *Harris v. United States*, 390 U.S. 234; 19 L.Ed.2d 1067; 88 S.Ct. 992, but has concluded that even after the standards established by those cases are applied, the search on April 28, 1967, and the resultant seizure were not lawful.

The Supreme Court of Illinois has repeatedly said:

"The critical issue is whether the situation that confronted the officer justified the search."

*People v. Burnett,* 20 Ill.2d 624; 170 N.E.2d 546 and *People v. Watkins,* 19 Ill.2d 11; 166 N.E.2d 433.

In *People v. Boozer,* 12 Ill.2d 184; N.E.2d 619, the Court said:

"The right of search incident to a lawful arrest has been held to extend to the surrounding premises under the possession and control of the defendant [Cases cited]; including a public business room [Case cited]; the home or dwelling [Case cited] and the vehicle of the person arrested [Cases cited], provided that the search is made at the time of arrest. [Cases cited.]"

A careful examination and scrutiny of the cases cited by the State and Federal reviewing courts indicating that search of premises incident to the arrest of the defendant on the premises is allowed only if there are exigent circumstances that establish the reasonableness of the search, and that these exigent circumstances justify the absence of a search warrant. None of the exigent circumstances were present and justified the search.

A similar situation existed in *People v. Kalpak,* 10 Ill.2d 411; 140 N.E.2d 726, where the court said at page 735:

"This search of Johnson's home, in his absence, without a search warrant, and without his consent, was clearly illegal and in violation of his rights, guaranteed by the fourth amendment to the United States and section 6 of article II of the constitution of Illinois, S.H.A. [Cases cited.] The admission in evidence, over objection, of the articles thus seized, violated said defendant's rights guaranteed by the fifth amendment to the United States constitution and section 10 of article II of the Illinois constitution. [Case cited.] Johnson's motion to suppress should have been allowed. Review of the authorities on this question is unnecessary."

■■ In the retrial of this cause those items of evidence seized on April 28, 1967, should be suppressed.

For the reasons assigned, the cause is reversed and remanded for a new trial.

Reversed and remanded.

CRAVEN, P. J., concurs.

Mr. JUSTICE TRAPP dissenting:

Upon a strict review of the record it might be said that there was a waiver of defendant's challenge for cause as to the juror, Davis. It seems more appropriate, however, to review the issues upon the facts of record.

In determining that it was reversible error to deny the challenge for cause, the opinion turns to the "cumulative effect" of factors of acquaintance and relationship, although no single factor was considered compelling. It seems fair to point out that many of such factors were remote in time and place.

We note that the telephone conversation with a victim, Hornstein, was Davis' inquiry concerning the purchase of a pool table advertised by the former. Such occurred a year prior to the time of the offense, and the matter was dropped when Davis learned the size of the table.

There is reference to an acquaintanceship with a physician who testified at the trial. The record shows that it was some twenty years since the physician and Davis had been neighbors, or had enjoyed a physician-patient relationship. There was, in fact, no challenge or controversy concerning the medical testimony.

The potential influence of the affinity with the witness, Hurrelbrink, seems meaningless in the light of the record that Davis had not seen such witness in three or four years, although they had lived but a few miles apart. The *voir dire* shows that Davis' wife was employed in the court house with the Board of Review. The record also shows that defendant's counsel was friendly with her, and that he sought her services for the transaction of his business in that office. We perceive no basis for influence in the fact that Davis' son was an employee of the State Highway Department. *United States v. Wood,* 299 U.S. 123; 81 L.Ed. 78.

The role of the sheriff, Ryan, as a witness was virtually nil as presented in the abstract of defendant. He was present at the time of arrest and testified as to the posting of a guard, but we find nothing in his testimony as to matters of controversy. Thus, this case has a substantial distinction from the cited *State v. Jackson,* 43 N.J. 148; 203 A.2d 1; 11 A.L.R.3d 841. In that case the challenged juror was a close friend of a police detective, and it appears that the case turned upon a stern attack upon the credibility of the detective. Such factor is not present here.

A complete evaluation of the abstract of the *voir dire* examination, including the portion quoted in the opinion, discloses frank and conscientious response to the questions of the court and counsel, and a serious realization of the responsibilities of a juror. While summary may be challenged, it seems fair to say that Davis answered that he had no opinion as to guilt or innocence, that he would subject the witnesses whom he knew to the same standards of credibility as those whom he did not know, and that he would suffer no embarrassment in returning a verdict which might be adverse to the State's Attorney whom he knew. As to the latter item, he pointed out that he would have to live with his conscience. In the context of the abstract it seems fair to say that Davis

responded affirmatively to the question of defense counsel, "*  *  * would you accept a juror in the same frame of mind as you are now in in this case?" (By this quotation we do not imply approval of the form of question.)

Our statute provides that it shall not be a challenge for cause that a juror has read a news account of a crime or that he has formed an impression or opinion based upon rumor or a news account, if such juror shall, upon oath, state that he can fairly and impartially render a verdict in accordance with the law and the evidence, "*  *  * and the court shall be satisfied of the truth of such statement". (Ch. 78, par. 14, Ill. Rev. Stat. 1967.) This standard of measure meets the requirements of due process as developed in *Irvin v. Dowd*, 366 U.S. 717; 81 S.Ct. 1639; 6 L.Ed.2d 751. See *People v. Gendron*, 41 Ill.2d 351; 243 N.E.2d 208.

The majority opinion in *People v. Cesarz*, 44 Ill.2d 180; 255 N.E.2d 1, and the opinion in *People v. Harris*, 38 Ill.2d 552; 232 N.E.2d 721, are controlling on this issue. The latter case dealt with a juror's business association and social acquaintanceship with the prosecuting attorney, while the former dealt with the acquaintanceship with witnesses and the family of the decedent. In each case the test by the court was the presence or absence of an opinion of guilt, whether the juror could apply the same test of credibility to the witnesses known as to those who were unknown, and whether the juror would suffer embarrassment in returning a verdict against counsel known to him. Upon this last question Davis volunteered the statement of his consideration of his conscience in returning a verdict. Here, as in *Harris*, Davis indicated that he would consider a juror having his then frame of mind to be fair and impartial in the trial of a case in which he, the juror, was a party.

The trial judge conducted a careful *voir dire* and we have observed no limitation upon the interrogation of the juror by counsel. During a considerable period of time the trial judge had an opportunity to observe Davis as he made his answers to the questions. The record shows that there was meticulous care in applying the standards of qualification which have been discussed. The challenge for cause was presented and considered outside of the presence of the jury at a time when four jurors remained to be accepted, so that there was no direct focus upon this juror. I cannot agree that there is an abuse of discretion where the trial court has, in fact, applied the rules established by the statute and case law.