THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT E. GEORGE, Defendant-Appellant.

Fifth District  No. 78-27

Opinion filed August 7, 1979.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles V. Romani, State's Attorney, of Greenville (Robert C. Perry and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant brings this appeal from his conviction of aggravated assault after a jury trial. The trial court imposed a sentence of 364 days imprisonment "to run consecutive with any now pending sentence or any such further sentence received by virtue of a parole violation." Defendant has raised two issues on this appeal. He first contends that he was denied his constitutional right to an impartial jury when the trial court overruled a challenge for cause to a juror who was acquainted with one of the prosecution witnesses. He next contends that a new sentencing hearing is required because the trial court imposed an improper consecutive sentence.

The evidence showed that on August 23, 1977, Mary Vohlken arrived at the Greenville, Illinois, I.G.A. store at about 1:15 p.m. Defendant Robert George was in the parking lot. Mrs. Vohlken parked her car and then George walked over to her car. She opened her car door and stood

up to get out when the man asked for the time of day, and she told him. She testified that then he said "Don't say a word" and she looked down and saw that he had a knife. She then started screaming and he repeated, "Don't say a word." When she continued screaming, he ran to his car and left the parking lot. He did not ask for money. George's testimony was the same up to the point about asking her the time. He testified that she told him the time, and then started screaming, apparently because she had seen the knife. He denied saying anything to her except to ask for the time. He said he had been sitting in his car using the knife to cut leather on a boot strap and had carried it with him when he went over to ask the time. He testified that he had no intention of harming Mrs. Vohlken and had never pointed the knife at her. He left when she began screaming because he was on parole from Menard Penitentiary, and did not want to be in a situation where he would be sent back. The jury apparently believed Mrs. Vohlken's testimony. In any event, the sufficiency of the evidence is not an issue on appeal.

Defendant's first contention is that he was denied his constitutional right to an impartial jury when the trial court overruled a challenge for cause to a juror who was a friend of a prosecution witness. During voir dire, a potential juror, Mrs. Schneider, indicated in response to the court's questioning that she knew one of the State witnesses, Steve Dothager. The following exchange occurred:

"THE COURT: I mean what we're wanting to know, will you treat his testimony if he testifies just like anybody else?

JUROR SCHNEIDER: Well, it may make a little difference come to think of it.

THE COURT: In other words, you think that maybe you might show some partiality if he testifies?

JUROR SCHNEIDER: Yes. He was a great buddy of my deceased son."

The trial court then permitted further questioning of Mrs. Schneider by both counsel. Mrs. Schneider indicated during that questioning that she had known Steve Dothager for about five or six years. On further questioning by the State's Attorney, Mrs. Schneider indicated that she did not think that she would give greater weight to Steve Dothager's testimony than to that of anyone else. Defense counsel challenged Mrs. Schneider for cause. The defense had exhausted its peremptory challenges. On further examination by the court, Mrs. Schneider indicated that she could be fair and impartial to both sides. The court asked her to explain the discrepancy between her earlier and later statements. She responded:

"Well, I thought you should know that my son was a big friend of

his. I didn't want to skip that; and I really think it wouldn't make no difference though."

The court denied the challenge for cause, indicating that the questioning had been intensive and her response had been satisfactory. ■■ The party seeking to challenge a juror for cause bears the burden of demonstrating that the juror possesses a disqualifying state of mind. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) The determination of whether or not the prospective juror possesses the state of mind which will enable him to give to an accused a fair and impartial trial rests in the sound discretion of the trial judge. His determination should not be set aside unless it is against the manifest weight of the evidence. *People v. Harris* (1968), 38 Ill. 2d 552, 556, 232 N.E.2d 721, 723.

We disagree with defendant that the trial judge's denial of the challenge for cause was against the manifest weight of the evidence. The record shows that the prospective juror gave frank and candid answers to the voir dire questions. She felt that the court should know that the witness had been a good friend of her deceased son, but "* * * I really think it wouldn't make no difference though." She testified that she would not favor his testimony over other witnesses, that her relationship to the witness would not affect her deliberations, and that she could be impartial to both sides. In *People v. Cole*, our supreme court affirmed the trial court's denial of a challenge for cause. In *Cole*, the prospective juror had heard about the case through the news media, had known the State's Attorney and his assistant for a number of years, had worked for the State's Attorney in his campaign, was personally acquainted with a material witness, was related to another witness, and had a son who was married to the sister of a witness. The prospective juror there stated that he had no opinion as to the defendant's guilt, that he would disregard anything he had heard about the case outside the courtroom, that his prior contacts with the State's Attorney and his assistant and the witnesses would not influence him, and that he would give the testimony of these witnesses no greater weight than he would give the testimony of others. The supreme court concluded that the trial court's denial of the challenge for cause was not against the manifest weight of the evidence.

In this case the prospective juror's association with one witness exhibited less potential for prejudice than the contacts of the prospective juror in *Cole*. We also observe that the testimony of Mr. Dothager supported that of the complaining witness on collateral matters only. He did not know what had actually transpired during the time of the alleged offense. He testified that he saw the complaining witness and the defendant at the car; that it looked like they were having a conversation or argument; that the woman then tried to close her car door and that the

man ran to his car and drove away. In light of the defendant's admissions, these facts were not in controversy. The issue before the jury was essentially one of credibility between the complaining witness and the defendant as to what was transpired near the car.

■■ The testimony of Mrs. Schneider during voir dire that she knew Mr. Dothager but would not favor his testimony, that her relationship to him would not affect her deliberations and that she could be impartial to both sides is a sufficient basis for the trial court's denial of the challenge for cause. We hold that this determination was not contrary to the manifest weight of the evidence and therefore was not error.

Defendant next contends that a new sentencing hearing is required because the trial court imposed an improper consecutive sentence. The trial court imposed a sentence of 364 days "to run consecutive with any now pending sentence or any such further sentence received by virtue of a parole violation. * * *"

In *People v. Walton* (1969), 118 Ill. App. 2d 324, 254 N.E.2d 190, the court in imposing sentence used the following language: "This sentence is to be served consecutively to any other sentence which may have been imposed." On appeal, the court stated:

> "Such language is so broad that it may be said to make this sentence consecutive to other sentences not in the present record. A sentence should be so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a nonjudicial or ministerial officer to supplement the written words to ascertain its meaning." 118 Ill. App. 2d 324, 333, 254 N.E.2d 190, 194, 195.

■■ The State concedes that the sentence was improper under *Walton*, and agrees that the cause must be remanded for resentencing. However, the State contends that the resentencing hearing should be for the limited purpose of allowing the trial court to state with particularity the sentence or sentences to which the sentence in this cause is to be consecutive. The court in *People v. Toomer* (1958), 14 Ill. 2d 385, 152 N.E.2d 845, held that a sentence of imprisonment to take effect in the future as cumulative punishment upon the termination of another sentence must be of such certainty that the commencement of the second and the termination of the first sentence may be ascertained from the record.

Defendant urges that the remand should not be limited solely to the mechanics of supplying the omitted information but should include a full evidentiary hearing and then imposition of sentence. He contends that this issue is controlled by section 5—5—3(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3(c)) and that this cause should be remanded to the trial court for a sentencing hearing under section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat.

1977, ch. 38, par. 1005—4—1), including the taking of evidence of the defendant's life, moral character and occupation since the original sentence was imposed. We do not agree.

Section 5—5—3(c) of the Unified Code of Corrections provides:

"In any case in which a sentence originally *imposed or recommended by a jury* is vacated, the case shall be remanded to the trial court. The trial court shall hold a hearing under Section 5—4—1 of the Unified Code of Corrections which may include evidence of the defendant's life, moral character and occupation during the time since the original sentence was passed. * * *" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3(c).)

An amendment to this section, which became effective February 1, 1978, does not limit its applicability to cases in which the original sentence was imposed or recommended by a jury. We note, however, that the trial court is not obliged in either event to receive evidence of defendant's life, moral character and occupation during the time since the original sentence was imposed under either section 5—5—3(c) or the amendatory section (section 5—5—3(d)).

For the foregoing reasons, the conviction herein is affirmed and the cause is remanded to the trial court for a sentencing hearing and subsequent imposition of sentence.

Affirmed; remanded for resentencing.

JONES and KUNCE, JJ., concur.